IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LYNNE D. PANTING, PERSONAL REPRESENTATIVE of the ESTATE of RONALD B. PANTING, DECEASED,<br><br>Plaintiff<br><br>THE UNITED STATES OF AMERICA, THE UNITED STATES AIR FORCE AND OFFUTT AFB MORALE AND WELFARE FUND, AERO CLUB, aka LEMAY AERO CLUB, a "NAFI" of the UNITED STATES OF AMERICA.<br><br>Defendants. | Case No. _____ |

## COMPLAINT

The Plaintiff, **Lynne D. Panting**, is the duly appointed qualified and acting Personal Representative of the **Estate of Ronald B. Panting**, deceased, and is authorized to pursue the following actions on behalf of the Estate against the named Defendants herein. These actions are brought pursuant to *Neb. Rev. Stat.* § 30-809 for Wrongful Death under the Nebraska Wrongful Death Statute, and for Breach of Contract and Negligence under the common law. The Plaintiff pleads those matters set forth below as the basis for this lawsuit and each cause of action against the United States of America, the United States Air Force and Offutt AFB Morale and Welfare Fund, Aero Club, aka LeMay Aero Club (hereinafter a "NAFI").

## GENERAL AVERMENTS

1. The Plaintiff is the widow of Ronald B. Panting. She was duly appointed by the County Court of Sarpy County, Nebraska on June 25, 2018 as the qualified and acting Personal Representative of the Estate of Ronald B. Panting, deceased. (**Exhibit 1**).

2. The Defendants are the United States of America (hereinafter referred to as the "United States") and its instrumentalities, the United States Air Force and Offutt AFB

Morale and Welfare Fund, Aero Club, aka LeMay Aero Club, (hereinafter a "NAFI"). These instrumentalities are also referred to herein as the "named Defendants."

3. The NAFI entered into a Flight and Ground Instructors Contract with the Decedent on July 19, 2016. (**Exhibit 2**). Pursuant to the Contract:

    A. The NAFI contracted with and represented to the Decedent that the Decedent was not an employee of the NAFI, that an employer-employee relationship did not exist between the NAFI and the Decedent, and that the Decedent was instead a contractor who was to split his fees with the NAFI;

    B. The NAFI contracted with and represented to the Decedent that it would furnish the Decedent with suitable aircraft to meet currency requirements and for proficiency;

    C. The NAFI contracted with and represented to the Decedent that it was an instrumentality of the United States and its Government; and

    D. The NAFI contracted with and represented to the Decedent that nothing contained within the Contract with the Decedent shall relieve or be construed as relieving the NAFI or any other agency or instrumentality of the United States from any liability resulting from its negligence.

4. The Decedent accepted the terms of the Contract and signed the Contract as presented by the NAFI on July 19, 2016.

5. The Decedent was killed in the crash of a Beech Aircraft on July 24, 2016.

6. The Decedent left surviving him his wife, Lynne D. Panting, his son, Matthew D. Panting, and his daughter, Stephanie L. Panting, as next-of-kin. At the time of the death of the Decedent, his widow and next-of-kin were entitled to his support, care, comfort, companionship, society, love, affection, services and other pecuniary items during his remaining normal life expectancy. This action is maintained by the Decedent's widow on her own behalf, and on behalf of the Decedent and the Decedent's next-of-kin.

7. The Decedent's date of birth was May 1, 1955. He was, at the time of his death, 61 years of age with a normal life expectancy in excess of 16.43 years. (**Exhibit 3**).

8. The United States Air Force was, and is at all relevant times, an agency and instrumentality of the United States Government.

9. The LeMay Aero Club was at all relevant times an instrumentality of the United States Air Force and, by extension, the United States and its Government. The Aero Club was also at all times relevant an organization that pursuant to Federal Regulations was charged with operating and maintaining aircraft that were owned by the United States Air Force and were to be used by United States Air Force pilots in order to achieve advanced pilot ratings. (**14 CFR Part 91**) (**Exhibit 4, Exhibit 5**).

10. The Standing Operating Procedures (SOP) for the LeMay Aero Club were authored, promulgated and published by the United States Air Force on January 1, 2015. Those Procedures were in force and effect when the Decedent was killed in the crash of the Beech Aircraft on July 24, 2016. (**Exhibit 6**).

11. This action is brought under the Federal Tort Claims Act, and jurisdiction is based on 28 U.S.C. §1346(b) and 28 U.S.C. §2671 through §2680. Venue is proper in the District of Nebraska pursuant to 28 U.S.C. §1402(b), because the acts and omissions giving rise to this lawsuit occurred in Nebraska, and the Plaintiff resides in Nebraska.

12. The Plaintiff and Decedent's next-of-kin initiated this action when they presented their written Form 95 Claims against the United States to the United States as required under the law. (**Group Exhibit 7**). The Exhibits to the Form 95 Claims were attached to the Claims. The Claims were respectively served on and delivered to the United States Air Force at Andrews Air Force Base and Offutt Air Force Base on July 20, 2018. (**Group Exhibit 7A**). A Supplement to the Claim Forms dated July 23, 2018 was served on the named Defendants on July 24, 2018. (**Group Exhibit 7B, Group Exhibit 7C**).

13. The United States Department of the Air Force issued its Denial of the Plaintiff's Claims on May 9, 2019 **(Exhibit 8)**. This lawsuit follows that Denial.

14. The Decedent, at the time of the crash, was a Flight Instructor who had been appointed as a Designated Pilot Examiner by the Federal Aviation Administration (FAA) to provide flight instruction services and examinations for pilots who had elected to pursue advanced pilot ratings. (**Exhibit 4, Exhibit 5).**

15. On July 24, 2016, the Decedent was conducting a pilot checkride that was requested by Captain Michael Trubilla, a salaried United States Air Force Pilot, who was pursuing his air transport pilot rating to complete his certification to become a civilian pilot. The airplane that was piloted by Captain Trubilla during the checkride was a Beechcraft Model 95 B55 T42A. The registered owner of the aircraft was the United States Air Force. The LeMay Aero Club operated and maintained the Aircraft in connection with its Pilot School through the sponsorship of the United States Air Force pursuant to **14 CFR Part 91**. (**Exhibit 4, Exhibit 5**). Captain Trubilla was the Pilot in Command for the flight. (**FAR 61.47**) (**CFR 61.47**).

16. At approximately 2:33 p.m. on July 24, 2016, the Beech Aircraft was cleared by air traffic control to depart Millard Airport (KMLE) in Nebraska, and to proceed to and enter the west practice area of the Airport, approximately seventeen miles from the KMLE Airport, for the checkride. An automated weather reporting facility nearby reported at 2:55 p.m. with a clear sky and no potential environmental factors. (**Exhibit 4, Exhibit 5**).

17. Radar tracked the flight as it transitioned into the west practice area. (**Exhibit 4, Exhibit 5**). Once in the practice area, the airplane made *two* level turns and *then* began *slowing* while at 5,500 ft. At 2:58:10 p.m., the airplane was at 5,500 ft and *9* seconds later, it was at 4,700 ft, indicating that it was descending at a rate of about 5,000 fpm. *Ten* seconds after that, the airplane was at 3,600 feet and had reversed heading. The last radar return with an associated altitude occurred *9* seconds later when the airplane was at 2500 ft, indicating that it was descending at a rate of about 6,000 fpm. At approximately 3:00 p.m. on July 24, 2016, the Beech 95-B55 Aircraft impacted the terrain near Leshara, Nebraska. The Decedent and Captain Trubilla were killed, and the Aircraft was

substantially damaged. No distress calls were received from the airplane. (**Exhibit 4, Exhibit 5**).

18. The negligence of the named Defendants, the United States, the United States Air Force, the NAFI and their instrumentalities, separately and collectively, was a proximate cause of the crash that killed the Decedent. The negligent acts and omissions are itemized in general, as set forth below:

    A. The Defendants and their instrumentalities failed to inspect and maintain the aircraft and its related stall warning equipment that had been equipped on the aircraft;

    B. The Defendants and their instrumentalities failed to remove the aircraft from service when they knew or should have known that the stall warning equipment was inoperative and had failed on several earlier occasions while in flight;

    C. The Defendants and their instrumentalities failed to warn the Decedent when it knew or should have known that the Aircraft had been and was lacking operative stall warning equipment while engaged in stall exercises as part of a planned pilot checkride;

    D. The Defendants and their instrumentalities failed to remove the Aircraft from service when it knew or should have known that the Aircraft was not airworthy;

    E. The Defendants and their instrumentalities failed to provide the Decedent with a safe and airworthy aircraft in order for him to do his job under his FAA assignment and his Contract with the NAFI, the United States and the United States Air Force.

19. Exhibits 1-11, attached hereto, are redacted, true, accurate and complete images of the original documents pursuant to FRCP Rule 5.2 and are incorporated herein by reference.

## FIRST CAUSE OF ACTION
### (Wrongful Death)

1-19. The Plaintiff incorporates by reference Paragraphs 1-19 and each subparagraph thereof of the foregoing General Averments as Paragraphs 1-19 of this First Cause of Action as if expressly restated herein.

20. The Plaintiff bases this First Cause of Action on *Neb. Rev. Stat.* §30-809.

21. At all times relevant, the Decedent was a Flight Instructor who had been designated by the Federal Aviation Administration as a Designated Pilot Examiner (DPE) who operated as an independent contractor retained by or on the behalf of the named Defendants. (Exhibit 4, Exhibit 5).

22. The Decedent relied upon the assurances and representations made to him by or on the behalf of the named Defendants to furnish him with suitable aircraft to meet currency requirements, and for proficiency in his work as a Designated Pilot Examiner and Ground Instructor for their pilots, and that it would be safe for him to conduct pilot instruction and checkrides in line with his duties as a Designated Pilot Examiner assigned by the Federal Aviation Administration to conduct these functions. (**Exhibit 2**).

23. At the time that the Decedent and Captain Michael Trubilla boarded the Beech Aircraft for the fatal checkride flight, there existed specific United States Statutes, FAA Regulations and FAA Directives regarding the airworthiness of an aircraft and the requirements that an operative stall warning system be in place on the aircraft before takeoff. (**Group Exhibit 9**). These laws included:

   (a) 14 CFR Section 91.7: Airworthiness;
   (b) FAA DOT Section 25.207: Stall Warning Device (Must be Clear and Distinctive);

    (c)    14 CFR Section 23.207: Stall Warning Device (Must be Clear and Distinctive);

    (d)    14 CFR 61.47

    (e)    FAR 61.47: Status of a Designated Pilot Examiner

24. When the Decedent and Captain Trubilla boarded the Beech Aircraft for the fatal checkride flight on July 24, 2016, there was on board a *Pilot Operators Manual* for the Aircraft that explicitly informed the Pilot that the Aircraft included an operative stall warning device with an operative warning horn that would provide the pilot ample time to prepare for an imminent stall. (**Exhibit 4, Group Exhibit 4A, Exhibit 5, Exhibit 10**).

25. When the Decedent boarded the Aircraft for the checkride flight on July 24, 2016, the named Defendants had a duty and responsibility to provide the Decedent with a safe and airworthy aircraft consistent with the expectations of the Federal Aviation Administration, its Rules, Regulations and Directives, the terms contained within the Decedent's Contract with the NAFI, the Operator's Manual on board the Aircraft and the duty that was owed to the Decedent as an independent Designated Pilot Examiner specifically designated by the FAA to conduct the type of checkride requested by Captain Trubilla.

26. After assuming the duty and responsibility to provide the Decedent with an airworthy and safe aircraft for the pilot checkride that he had been designated by the FAA to conduct, the named Defendants and their agents and instrumentalities, separately and collectively, were negligent and breached that duty to the Decedent and ignored their responsibility to him in each of the following respects:

    (a) They failed to disclose to the Decedent when they knew, or should have known, that the Aircraft lacked the operative stall warning equipment which would have provided the pilot and the Decedent with a warning of an imminent stall in time for the pilot to follow the protocol necessary to recover from the stall **(Exhibit 4, Group Exhibit 4A, Exhibit 5, Group Exhibit 9, Exhibit 10**);

    (b) They neglected to remove the Aircraft from service when they knew or should

7

have known that the stall warning equipment installed on the Aircraft was inoperative and had failed on several recent earlier occasions while the Aircraft was in flight (**Exhibit 4, Group Exhibit 4A, Exhibit 5**);

(c) They knew or should have known that the electrical contacts associated with the electronic stall warning equipment on the Aircraft had been fouled by a foreign substance that obstructed the operation of the stall warning horn that was designed to engage in order to warn the pilot in sufficient time to recover from a stall that would imminently occur (**Exhibit 4, Exhibit 5**);

(d) They failed to reasonably and adequately maintain and repair the stall warning equipment on the Aircraft in the days before the fatal crash (**Group Exhibit 4A, Exhibit 5**);

(e) They permitted the Decedent to board and conduct a checkride flight on an aircraft that was not airworthy;

(f) They were otherwise negligent in the performance of the periodic maintenance and servicing of the Aircraft that was required to be performed pursuant to the FAA rules and regulations in order to maintain the Aircraft in an airworthy condition.

27. The foregoing careless and negligent acts and omissions by the named Defendants, separately and collectively, were a proximate cause of the crash of the Aircraft piloted by Captain Trubilla that killed the Decedent and Captain Trubilla.

28. The Decedent's death has resulted in future pecuniary losses to his widow, Lynne D. Panting, his children, and next-of-kin, Matthew T. Panting and Stephanie L. Panting, and damages that will include lost earnings, lost support, comfort, love, companionship, advice, society, services and counsel with ascertainable value.

WHEREFORE, the Plaintiff prays for a money judgment on behalf of the Estate of Ronald B. Panting and against each of the named Defendants in such amount as to fairly compensate the Estate for its damages under this First Cause of Action.

## SECOND CAUSE OF ACTION

### (Medical, Funeral and Burial Expenses)

1-28. The Plaintiff incorporates by reference Paragraphs 1-28 and each subparagraph thereof of the General Averments and the First Cause of Action as Paragraphs 1-28 of this Second Cause of Action as if expressly restated herein.

29. As a direct and proximate result of the negligence of the named Defendants and the death of the Decedent, the Plaintiff, as Personal Representative of the Decedent's Estate, has incurred funeral and burial expenses in the sum of $5,165.15 for which the Plaintiff is entitled to recover from the Defendants, and each of them.

WHEREFORE, the Plaintiff prays for a money judgment on behalf of the Estate of Ronald B. Panting and against each of the named Defendants for the reimbursement of the stated medical, funeral and burial expenses and for such additional amount as will fairly compensate the Estate for these damages under this Second Cause of Action.

## THIRD CAUSE OF ACTION

### (Conscious Pain and Suffering of the Decedent)

28. The Plaintiff incorporates by reference Paragraphs 1-28 and each subparagraph thereof of the General Averments and First Cause of Action as Paragraphs 1-28 of this Third Cause of Action as if expressly restated herein.

29. The Decedent experienced conscious pain and suffering, both physical and emotional, including, but not limited to, the anticipation, apprehension, and realization associated with his impending death, which included his terror and fear that his death was imminent as the Aircraft spiraled and spun to the ground beyond control.

30. The Aircraft rapidly entered its fatal spin when the electrical stall warning safety mechanism installed on the Aircraft by the manufacturer to prevent such an event remained inoperative during the flight **(Exhibit 4, Group Exhibit 4A, Exhibit 5)**.

WHEREFORE, the Plaintiff prays for a money judgment on behalf of the Estate of Ronald B. Panting and against each of the named Defendants in such amount as to fairly compensate the Estate for the conscious pain and suffering experienced by the Decedent under this Third Cause of Action.

## FOURTH CAUSE OF ACTION
### (Negligence)

1-19.    The Plaintiff incorporates by reference Paragraphs 1-19 and each subparagraph thereof of the General Averments as Paragraphs 1-19 of this Fourth Cause of Action as if expressly restated herein.

20-28.    The Plaintiff incorporates by reference Paragraphs 21-28 and each subparagraph thereof of the First Cause of Action as Paragraphs 20-28 of this Fourth Cause of Action as if expressly restated herein.

29.    The Plaintiff bases this cause of action on the common law and the Federal Statutes, Rules, Regulations and Directives referenced herein.

30.    Captain Michael Trubilla, a salaried employee of the United States Air Force, was the checkride Applicant and the Pilot in Command (PIC) of the Aircraft that crashed during the checkride, pursuant to **FAR. 61.47**. (**Group Exhibit 9**).

31.    On July 24, 2016, the Beech Aircraft Pilot Operators Manual that was onboard the Aircraft when the Decedent and Trubilla boarded the Aircraft explicitly stated that the stall warning equipment onboard the Aircraft was in place and operative, as follows:

"As an impending stall is approached, a stall warning indicator triggered by a sensing vane in the left wing *sounds* a warning horn while there is *ample time* for the pilot to correct his attitude. The warning is equally *effective* in *all* flight attitudes and at *all* weights and airspeeds. The warning signal will be irregular and intermittent at first and will become *steady* as the airplane approaches a complete stall." (**Exhibit 4, Group Exhibit 4A, Exhibit 10).**

32. When the Decedent and Captain Trubilla boarded the Aircraft for the checkride flight, the stall warning mechanism on the Aircraft had in fact failed in flight on three separate earlier occasions, as recently as two days earlier. **(Exhibit 4, Group Exhibit 4A)**.

33. The Federal Statutes, FAA Rules, FAA Regulations and FAA Directives that were in force and were violated by the named Defendants when the Decedent and Captain Trubilla boarded the aircraft on July 24, 2016 are set forth below (**Group Exhibit 9):**

    (a) 14 CFR Section 91.7: Airworthiness;

    (b) FAA DOT Section 25.207: Stall Warning Device (*Must* be Clear and Distinctive);

    (c) FAR 61.47: Status of a Designated Pilot Examiner

    (d) 14 CFR Section 23.207: Stall Warning Device (*Must* be Clear and Distinctive)

34. The Federal Statutes, FAA Rules, FAA Regulations and FAA Directives required at the time of the crash that the stall warning within the Aircraft *must* begin sufficiently *in advance* of an imminent stall for the stall to be *averted* by pilot action taken *after* the stall warning *first sounds* in order to provide the pilot with *sufficient margin* to prevent *inadvertent* stalling with the flaps and landing gear in any normal position, and *must be clear and distinctive* to the pilot in straight and turning flight. (**Exhibit 10, Exhibit 4, Group Exhibit 4A, Exhibit 5, Group Exhibit 9).**

35. Raytheon Aircraft Company, the *manufacturer* of the Beech Aircraft that crashed, had warned in its *Shop Manual* that the *only* way to test the accuracy of the stall warning setting in the Aircraft was to *fly* the airplane into a stall, noting the speed at which the warning horn came on and the speed at which the full stall would occur. (**Exhibit 11**).

36. Stall warning system tests on the Aircraft that crashed were not run by anyone, nor was the Aircraft taken out of service and grounded, between the time that the stall warning horn on the aircraft failed to operate on three separate occasions *two days* before the crash, and the time that the Aircraft left for its fatal flight with the Decedent on board two days later. (**Exhibit 4, Group Exhibit 4A, Exhibit 5**).

37. The failure of the stall warning system two days before the fatal crash was never addressed by the maintenance crew at the LeMay Aero Club, nor anyone else charged by the named Defendants with the maintenance of the Aircraft. (**Exhibit 4, Group Exhibit 4A, Exhibit 5).**

38. The Defendants knew or should have known that the electrical contacts associated with the electronic stall warning equipment on the Aircraft had been fouled by a foreign substance that obstructed and interfered with the operation of the stall warning horn that was expected to engage in order to warn the pilot in sufficient time to recover from a stall that could imminently occur at any time (**Exhibit 4, Exhibit 5**).

39. The statutory violations committed by the named Defendants and their respective agencies, instrumentalities, and staff constitute *evidence* of negligence on the behalf of each of them.

40. These violations of the foregoing Statutory, Regulatory, FAA Rules and Directives by the United States and its named agencies, instrumentalities and staff resulted in the loss of control and the crash of the Aircraft. (**Exhibit 5).**

41. The foregoing acts and omissions by the named Defendants and their respective agencies, instrumentalities, and staff were a proximate cause of the Aircraft to crash and the death of the Decedent.

WHEREFORE, the Plaintiff prays for a money judgment on behalf of the Estate of Ronald B. Panting and against each of the named Defendants in such amount as to fairly compensate the Estate for its damages under this Fourth Cause of Action.

### FIFTH CAUSE OF ACTION
**(Res Ipsa Loquitor)**

1-41. The Plaintiff incorporates by reference Paragraphs 1-41 and each subparagraph thereof of the Fourth Cause of Action as Paragraphs 1-41 of this Fifth Cause of Action as if expressly restated herein.

42. The crash that killed the two experienced, seasoned and respected airplane pilots would not ordinarily have occurred, and was of a type that does not generally happen, without the negligence of a party.

43. The crash of the Beech Aircraft was caused by the United States and one or more of the remaining named Defendants, agencies, instrumentalities and staff of the United States that were in exclusive control of the instrumentality, and had the ability to recall the Aircraft before or at the time that the Decedent boarded the Aircraft on July 24, 2016.

44. The stall warning equipment on the Aircraft that had failed on three consecutive earlier occasions only *two* days prior to the fatal flight, failed again on a *fourth* occasion when tested by the National Safety Transportation Board following the crash. (**Exhibit 4, Group Exhibit 4A, Exhibit 5**).

45. There exists no plausible explanation for the crash that killed the Decedent other than the failure of the stall warning equipment during the fatal flight that had been inoperative on *three* known earlier recent occasions and was confirmed again on a *fourth* occasion by the NTSB after the crash. (**Exhibit 4, Group Exhibit 4A, Exhibit 5**).

46. Neither the Decedent nor Captain Trubilla contributed to the cause of the crash as was documented by the evidence that the NTSB Laboratory provided *after* the crash when *the stall warning switch failed a fourth time during its initial continuity check when the electrical contacts appeared fouled by an undetermined substance. (***Exhibit 4, Exhibit 5***).

47. The cause of the crash, in light of the violation of the Federal Statutes, Rules, Regulations and Directives by the named Defendants, *speaks for itself,* and, under the doctrine of *res ipsa loquitor*, provides the requisite *inference* of negligence by the United States and its agencies, instrumentalities, and staff.

48. The foregoing evidence, provided by the investigation undertaken by the NTSB after the crash, provides the circumstantial evidence of the proximate cause of the crash to be the failure of the stall warning equipment to function because the electrical contacts had been fouled by an unknown substance **(Exhibit 4, Group Exhibit 4A, Exhibit 5).**

WHEREFORE, the Plaintiff prays for a money judgment on behalf of the Estate of Ronald B. Panting and against each of the named Defendants in such amount as to fairly compensate the Estate for its damages under this Fifth Cause of Action.

## **SIXTH CAUSE OF ACTION**
### **(Tortious Breach of Contract)**

1-19. The Plaintiff incorporates by reference Paragraphs 1-19 and each subparagraph thereof of the General Averments as Paragraphs 1-19 of this Sixth Cause of Action as if expressly restated herein.

20-28. The Plaintiff incorporates by reference Paragraphs 21-28 and each subparagraph thereof of the First Cause of Action as Paragraphs 20-28 of this Sixth Cause of Action as if expressly restated herein.

29. The Plaintiff bases this cause of action on the common law of contracts.

30. The NAFI entered into a Flight and Ground Instructors Contract with the Decedent on July 19, 2016 on behalf of the named Defendants. (**Exhibit 2**).

31. Under its Contract with the Decedent, the NAFI contracted with and represented to the Decedent that the Decedent was not an employee of the NAFI, that an employer-employee relationship did not exist between the NAFI and the Decedent, and that the Decedent was instead a contractor who was to split fees with the NAFI.

32. Under its Contract with the Decedent, the NAFI contracted with and represented to the Decedent that it would furnish the Decedent with suitable aircraft to meet currency requirements and for proficiency.

33. Under its Contract with the Decedent, the NAFI contracted with and represented to the Decedent that it was an instrumentality of the United States and its Government.

34. The Contract also assured the Decedent that the NAFI had the legal status of an *instrumentality* of the United States, that the NAFI was a party to the Contract, was an integral part of the United States Department of Defense and was in fact an *instrumentality* of the United States Government.

35. The NAFI assured the Decedent, as stated within its Contract, that the Contract, including identified attachments, enclosures and documents incorporated by reference, was the entire agreement between the parties.

36. The NAFI moreover assured the Decedent that "*nothing contained within its Contract shall relieve or be construed as relieving the NAFI or any other agency or instrumentality of the United States from liability.*"

37. The Decedent accepted the terms of the Contract and signed the Contract as presented by the NAFI on July 19, 2016.

38. The named Defendants, the United States, the United States Air Force and the NAFI, breached their contract with the Decedent by failing to provide and furnish the Decedent with suitable aircraft to meet currency requirements, and for proficiency, as contracted with the Decedent.

39. As a direct result of one or more of the violations of the Federal Statutory, Regulatory, and FAA Rules and Directives by the United States and its agencies, instrumentalities, and staff, and the breach of the contract with the Decedent, the Decedent, his widow, and his next-of-kin, individually and collectively experienced consequential damages that resulted from these violations of the contractual commitment made by the named Defendants when the Decedent was killed in the crash of the Aircraft piloted by Captain Trubilla. (**Exhibit 4, Group Exhibit 4A, Exhibit 5, Group Exhibit 9).**

40. The breach of contract by the named Defendants was the proximate cause of the death of the decedent.

WHEREFORE, the Plaintiff prays for a money judgment on behalf of the Estate of Ronald B. Panting and against each of the named Defendants in such amount as to fairly compensate the Estate for its damages under this Sixth Cause of Action.

Lynne D. Panting, Personal Representative of the Estate of Ronald P. Panting, Deceased.

By: /s/ David E. Copple
David E. Copple (#17274)
Michelle M. Schlecht (#22864)
Attorneys for the Plaintiff
Copple, Rockey, McKeever & Schlecht P.C., L.L.O.
2425 Taylor Avenue
Norfolk, Nebraska 68702-0078
Telephone: 402.371-4300
decopple@greatadvocates.com
MMSchlecht@greatadvocates.com