IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LYNN D. PANTING, Personal Representative of the Estate of Ronald B. Panting, deceased,<br><br>     Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA, et al,<br><br>     Defendants. | 8:19-cv-317<br><br>MEMORANDUM AND ORDER |

  This matter is before the Court on the defendants' partial motion to dismiss and motion to strike (filing 34). Defendants move to dismiss the claims against the United States Air Force and Offutt AFB Morale and Welfare Fund, Aero Club for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(h)(3). Filing 34 at 2-3. And defendants move to strike, under Fed. R. Civ. P. 12(f), the National Transportation Safety Board (NTSB) Aviation Accident Final Report (filing 33-6) attached to the plaintiff's amended complaint (filing 33), and all references to the Final Report contained in the amended complaint. Filing 34 at 3-4. For the reasons set forth below, both motions will be granted.

I. BACKGROUND

  On July 24, 2016, Ronald Panting was fatally injured in the crash of a Beech Aircraft. Filing 33 at 2. At the time of the crash, Ronald was a Designated Pilot Examiner for the Federal Aviation Administration and was conducting a practical test for an Air Force pilot. Filing 33 at 4. The Air Force

owned the aircraft involved in the accident, which was operated and maintained by the Aero Club. Filing 33 at 4. According to the plaintiff, the Air Force pilot was in command of the aircraft during the fatal flight. *Id.* Ronald's wife, Lynne Panting, acting as the personal representative of Ronald's estate, sued the defendants under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) alleging several tort claims. *See* filing 1. Her complaint relied, in part, on reports issued by the NTSB as part of its investigation of the crash. *See* filing 1.

Defendants answered asserting that the Air Force and the Aero Club were improper defendants under the FTCA's limited waiver of sovereign immunity and should be dismissed from the case. *See* filing 14 at 2. And the defendants asserted that the plaintiff could not rely on the NTSB Final Report. *See* filing 14 at 4. The plaintiff filed an amended complaint, but did not remove the Air Force and Aero Club as defendants and did not strike her references to or reliance on the NTSB Final Report. *See* filing 33. So, defendants filed the present motion to dismiss. *See* filing 34.

## II. STANDARD OF REVIEW
### 1. PARTIAL MOTION TO DISMISS

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges whether the court has subject matter jurisdiction. The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008).

A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack'" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the Court merely needs to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id*. Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered. *Id*.

Here, the defendants raise a facial challenge to subject matter jurisdiction by asserting that the FTCA does not waive sovereign immunity as to federal agencies or instrumentalities, and therefore the only proper defendant is the United States. Accordingly, the Court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). *Id*.

### 2. MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) provides that the Court may strike from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. And the Court may act either on its own or on motion from a party. *See* Rule 12(f)(1)-(2). Judges enjoy liberal discretion to strike pleadings under Rule 12(f). *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).

### III. DISCUSSION

#### 1. SUBJECT MATTER JURISDICTION UNDER THE FTCA

Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). And sovereign immunity is

3

jurisdictional in nature. *FDIC*, 510 U.S. at 475. Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit. *Id.* Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed. *United States v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001).

The FTCA confers jurisdiction on federal district courts to hear civil claims:

> against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

And while other federal statutes may confer upon a Federal agency the ability to sue and be sued, such authority "shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive." 28 U.S.C. § 2679.

The defendants argue that under the FTCA's limited waiver of sovereign immunity, the only proper party to this suit is the United States. *See* filing 34 at 4. And the plaintiff does not dispute the defendants' position. *See* filing 38 at 2. The Court agrees with the defendants and will grant the defendants' partial motion to dismiss all claims as to the Air Force and Aero Club.

2. MOTION TO STRIKE THE NTSB FINAL REPORT

In support of her amended complaint, the plaintiff attached and relied on two separate NTSB reports: the "Aviation Accident Factual Report," filing 33-4, and the Final Report, filing 33-6, which includes a section regarding proximate cause. *See generally* filing 33. While the defendants do not object to the Factual Report, they argue that 49 U.S.C. § 1154(b) prohibits use of the NTSB Final Report in this case. The Court agrees.

That statute provides "[n]o part of a report of the [National Transit Authority] Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from matters mentioned in the report." § 1154(b). An NTSB regulation clarifies that a "Board accident report" is "the report containing the Board's determinations, including the probable cause of an accident, issued either as a narrative report or in a computer format ('briefs' of accidents)." 49 C.F.R. § 835.2. It further specifies that "[p]ursuant to . . . 49 U.S.C. [§] 1154(b) . . . no part of a Board accident report may be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such reports." *Id*. A "factual accident report," however, is defined as "the report containing the results of the investigator's investigation of the accident." *Id*. And "[t]he Board does not object to, and there is no statutory bar to, admission in litigation of factual accident reports." *Id*.

The Eighth Circuit Court of Appeals has not ruled on the admissibility of NTSB Final Reports. However, other circuits have excluded the entirety of such reports based on the plain language of the statute and the NTSB's neutral fact-finding mission. *See, e.g.*, *Chiron Corp. & PerSeptive Biosystems, Inc. v. NTSB*, 198 F.3d 935, 940 (D.C. Cir. 1999); *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998); *Hickson Corp. v. Norfolk S.*

5

*Ry. Co.*, 124 F. App'x 336, 340–41 (6th Cir. 2005); *Benna v. Reeder Flying Serv., Inc.*, 578 F.2d 269, 271 (9th Cir. 1978); *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 639 (10th Cir. 1990).

Given the weight of this precedent and the clarity of the applicable statute and regulation, the Court concludes that the statute means what it says: no part of an NTSB report may be used in a civil action for damages. Thus, striking the entirety of the NTSB Final Report is appropriate.

In arguing to the contrary, the plaintiff points to *Budden v. United States*, 748 F. Supp. 1374 (D. Neb. 1990), *judgment vacated on other grounds*, 963 F.2d 188 (8th Cir. 1992), as support for her contention she should be permitted to cite the factual portions, rather than the probable cause portion, of the NTSB Final Report. *See* filing 38 at 3. In *Budden*, Judge Urbom ruled that portions of the NTSB report that "contain[ed] no opinions or conclusions as to the probable cause of the crash" were admissible unless subject to the rule against hearsay. 748 F. Supp. at 1377.

But the D.C. Circuit has persuasively explained why decisions like *Budden* should no longer be considered good law. *Chiron*, 198 F.3d at 940. In particular, the *Chiron* court explained that many older Court of Appeals cases had addressed the admissibility of *investigators'* reports but mislabeled them as "reports of the Board." *Id.* The NTSB responded to those cases with 49 C.F.R. § 835.2, which clearly differentiates between inadmissible Board accident reports and admissible factual accident reports. *Id.* But it took time for some courts to catch up, and in the meantime they continued to rely on abrogated authority. *E.g. Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 848 (10th Cir. 1986); *Curry v. Chevron, USA*, 779 F.2d 272, 274 (5th Cir. 1985). Those opinions were relied on by *Budden*, but as noted in *Chiron*, each circuit

6

subsequently recognized that the entire NTSB Final Report should be barred. 198 F.3d at 941; *see also* Burnett, 920 F.2d at 639; Campbell, 138 F.3d at 1001.

The Court finds the reasoning in *Chiron* persuasive and in line with the prevailing law. In passing 49 U.S.C. § 1154(b), Congress made it clear that no part of a NTSB final report may be used in a civil action for damages and that the NTSB final reports should not be used to facilitate litigation. And 49 C.F.R. § 835.2 ensures that plaintiffs will still have access to the factual information surrounding the accident without "having the unsavory affect [sic] of embroiling NTSB in the interest of civil litigants." *Chiron,* 198 F.3d at 941. That is the case here, as plaintiff has also relied on the NTSB Aviation Accident Factual Report, the use of which is not contested. *See* filing 33-4; filing 34. Accordingly, the Court will grant the defendants' motion to strike the NTSB Final Report and all references made to the report in the amended complaint.

IT IS ORDERED:

1. The defendants' partial motion to dismiss (filing 34) is granted.

2. The United States Airforce and Offutt AFB Morale and Welfare Fund, Aero Club are terminated as parties.

3. The defendants' motion to strike (filing 34) is granted.

4. Filing 33-4 is hereby stricken from the record and all references to and reliance upon filing 33-4 in plaintiff's amended complaint (filing 33) are hereby stricken.

Dated this 28th day of October, 2020.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
Chief United States District Judge