IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LYNNE D. PANTING, PERSONAL REPRESENTATIVE of the ESTATE of RONALD B. PANTING, DECEASED, | ) ) ) ) ) | 8:19-cv-00317-JMG-MDN<br><br>BRIEF IN OPPOSITION TO UNITED STATES' MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL EXPERT REPORTS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

This Brief is in opposition to Defendant's Motion to Strike Plaintiff's Supplemental Expert Reports of Jason Lukasik and Gregory Feith. The Supplemental Expert Reports of Plaintiff were timely disclosed pursuant to Fed. R. Civ. P. 26(a)(2)(E), Rule 26(e), and Rule 26(a)(3)(B). Without conceding any issue regarding the timeliness of the Supplemental Reports, Plaintiff further sets forth that the timing of the disclosure of the Supplemental Reports of Plaintiff's expert witnesses was justified and harmless.

Defendant's Motion to Strike Plaintiff's Supplemental Expert Reports must be overruled.

### FACTUAL HISTORY

Plaintiff filed her Complaint on July 18, 2019 (ECF No. 1), and an Answer was filed on September 17, 2019. (ECF No. 14). Plaintiff's First Amended Complaint was filed on July 30, 2020 (ECF No. 33), and Defendant's Answer to Amended Complaint was filed November 12, 2020. (ECF No. 46).

A Case Progression Order was entered on October 24, 2019. (ECF No. 20). The Case Progression Order was amended and deadlines were extended several times, upon agreement of the parties, to allow for the restoration of damaged records, the completion of discovery, record review by expert witnesses, and additional time for the completion of

1

depositions. (ECF No. 41, 52, 60, 64, 71, and 81). The most recent request to extend deadlines was due to discovery responses being provided by Defendant on February 4, 2022, so that Plaintiff's expert witnesses had adequate time to review discovery responses and then complete depositions. (ECF No. 81). The operative Seventh Amended Case Progression Order was filed February 23, 2022, setting forth various deadlines, including March 1, 2022 for completing written discovery, April 15, 2022 for Plaintiff to identify expert witnesses and complete expert disclosures, June 15, 2022 for the Defendant to identify expert witnesses and complete expert disclosures, July 15, 2022 for completion of depositions, and August 15, 2022 for filing Daubert Motions, Motions to Dismiss and Motions for Summary Judgment (ECF No. 84). All deadlines set forth in the Seventh Amended Case Progression Order have been complied with by the parties.

The Court entered an Order Setting Trial on July 6, 2022, with trial being scheduled on February 6, 2023. The Pretrial Conference is scheduled to be held on January 23, 2023. The parties' proposed Pretrial Conference Order and Exhibit Lists are to be emailed by 3:00 p.m. on January 13, 2023. (ECF No. 100).

Pursuant to Fed. R. Civ. P. 26(a)(2)(E) and 26(e), Plaintiff's expert witnesses, Jason Lukasik and Gregory Feith, submitted supplemental expert witness reports, which were attached to Plaintiff's Brief in Opposition to Motion for Summary Judgment filed September 8, 2022. (ECF No. 120, Ex. AE and AH). Defendant has filed a Motion to Strike Plaintiff's Supplemental Expert Witness Reports as being untimely. (ECF No. 129).

## ARGUMENT

**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL EXPERT REPORTS MUST BE OVERRULED.**

**I. Plaintiff's Supplemental Expert Witness Reports were Timely Disclosed Pursuant to Fed. R. Civ. P. 26(a)(2)(E) and Rule 26(e).**

Fed. R. Civ. P. 26(a)(2) governs the disclosure of expert testimony, providing the requirements for witnesses who must provide a written report in (2)(B), the time to disclose expert testimony in (2)(D) and supplementing the disclosure in (2)(E). It is undisputed that

Jason Lukasik and Gregory Feith are experts governed by Fed. R. Civ. Proc. 26(a)(2)(B) through (E).

With respect to supplementing disclosures according to Rule 26(a)(2)(E), the Rule sets forth that "the parties must supplement these disclosures when required under Rule 26(e)." Rule 26(e) provides as follows regarding supplementing disclosures and responses:

> (2) Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Rule 26(a)(3)(B) provides the time for pretrial disclosures and states, "unless the court orders otherwise, these disclosures must be made at least thirty days before trial."

"The report must be supplemented if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. The report and any supplementation allow the opposing party a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Estate of W. v. Domina Law Group,* 981 F. 3d 652, 2020 U.S. App. LEXIS 37740 (8th Cir. 2020).

In *Hillesheim v. O.J.'s Café, Inc.,* 2018 U.S. Dist. LEXIS 149057, 2018 WL 4190053 (Dist. of Nebraska, 2018), this Court recognized the continuing duty to supplement under Rule 26(e) with respect to new developments occurring after the initial expert witness report deadline. This Court adhered to an interpretation of the Federal Rules of Civil Procedure, setting forth that "additional supplemental expert reports based on new developments continued to be required, and permitted, pursuant to Rule 26(e) which requires that any additions or changes to the information contained in an expert's report must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due. "Unless the Court orders otherwise, [pretrial] disclosures must be made at least thirty days before trial. Fed. R. Civ. P. 26(a)(3)(B)." *Id.* In the *Hillesheim* case, the Court

acknowledged that Rule 26(e)(2) tied the deadline for supplementing expert reports to the deadline for Rule 26(a)(3) disclosures, thereby finding that the supplemental expert reports were not untimely. *Id.*

Following Plaintiff's deadline to identify expert witnesses and complete expert disclosures on April 15, 2022, depositions continued to be conducted in the case at bar. The deposition of Bert W. D. Aagesen was taken on June 21, 2022. During the deposition of Bert Aagesen, counsel for Defendant was questioning Plaintiff's expert about stall strips and his familiarity with them. When asking if the subject aircraft had stall strips, the testimony was as follows:

> Q. Okay. The Baron doesn't have those, does it?
> A. Well, see, that's the problem. The airplane had boots at first with rubber stall strips. Maybe we need to research whether those stall strips were put on the wing when the boots were taken off.
> Q. Okay. I will save that for another day. Let's go back to this. Let's go back to the stall.

(ECF No. 110, Ex. C, 86: 1-8).

When later asking further questions about items taken off the plane, counsel for Plaintiff asked what items were taken off the plane, and Mr. Aagesen replied:

> A. I don't know exactly what items were taken off, but I know that the boots were taken off, and I know that generators were no longer there. Now they had alternators. They had transformer rectifiers for the different equipment that they had. That all was taken out, and they made it a civilian airplane. So these transformer rectifiers and generators, they were there for equipment I never saw.
> Q. So you have the boots, the transfers, the rectifiers and what else?

4

A. Generators.

Q. Okay.

A. Yeah.

Q. Now, bear with me for a moment, because I drive a car, I don't fly a plane. Tell me, if you would, do any of those four items that you mentioned affect the flight of the airplane in any way, if there is a stall?

A. No. I don't think so.

Q. Okay.

A. But I never flew the airplane with those items installed. That's something that the maintenance department took off when they made it a civilian airplane.

Q. What do you mean by "boots?"

A. These are rubber leading edges, and if you run into icing conditions, you expand these rubber boots to break off the ice.

Q. Is that normally used in the airline industry?

A. Not the airlines. We use other methods, but it's very common for singles as well as light twins to have boots on the leading edges of the wing to combat ice.

Q. So nothing to do with this particular crash?

A. Well, so what I'm asking is, when those boots were taken off, the stall strips that make the airplane stall in a predictable manner, I don't think they were put back on as a metal piece where the stall strips had been with the boots on.

Q. Okay. So that's not a good thing?

A. No. It may be – it may be warranted to have a look into that.

(ECF No. 110, Ex. C, 99: 13-101: 12).

Following the deposition of Bert Aagesen, where he raised the need to do further research or look into whether the stall strips were put on the wing when the boots were

5

taken off (ECF No. 110, Ex. C, 86: 3-6), Plaintiff's expert witness, Greg Feith, had an opportunity to review Mr. Aagesen's deposition transcript approximately one week later. During his review, he learned of several issues, including modification to the airplane electrical system and the removal of the deicing system by the LeMay Aero Club. After discussions with counsel, Mr. Aagesen's deposition testimony became the basis for additional research being conducted by expert, Greg Feith. Mr. Feith's deposition was conducted on July 7, 2022, very shortly after reviewing Mr. Aagesen's deposition. Feith later completed his research on the issues derived from Mr. Aagesen's deposition testimony and included his supplemental opinions on the issues raised by Mr. Aagesen's testimony in his Supplemental Report dated September 8, 2022. (ECF No. 120, Ex. AE).

Similarly, following the deposition testimony of Mr. Aagesen regarding modifications of the aircraft by removing the deicing system, Mr. Lukasik had an opportunity to further investigate the maintenance records with respect to the personal knowledge Mr. Aagesen had of the situation that he testified about in his deposition. Expert witness, Jason Lukasik, included in his supplemental expert report the further research he conducted into the maintenance records, accident photos, and U.S. Army and Beechcraft publications and information.

Collectively, the further investigation by Mr. Feith and Mr. Lukasik based on the information related to the modification of the aircraft to remove the deicing boots resulted in the discovery of additional facts that bear directly on the airworthiness of the aircraft, and particularly the proper installation and calibration of the stall warning switch. It was discovered from the maintenance records that the boots and stall strip had been removed, requiring a first removal of the stall warning switch. (Dkt. No. 120-11, Lukasik Supp. Report, pp. 4-8 and 12, ¶ 1-3 and 5)(Dkt. No. 120-6, Feith Supp. Report, pp., p2, ¶ 1). Then, while searching for a photograph of this airplane on the internet to positively identify the location of the stall warning switch on the wing, a photo of the accident aircraft was discovered on an Illinois Department of Agriculture Wildlife website showing extensive damage to the leading edge of the left wing as a result of a collision with a flock of geese in Illinois, which the maintenance records also confirmed required a second re-build of the

left wing (and necessarily removal and re-installation of the stall warning switch) (Dkt. No. 120-11, Lukasik Supp. Report, pp. 8-10 and 12-13, ¶ 6)(Dkt. No. 120-6, Feith Supp. Report, pp., p3, ¶ 2), but then Mr. Lukasik located evidence of wing damage from another incident involving a landing accident, that confirmed a third re-build of the outboard leading edge of the left wing (and necessarily still another removal and re-installation of the stall warning switch) (Dkt. No. 120-11, Lukasik Supp. Report, pp. 10-13, ¶ 7). Additionally, in the course of that further investigation related to the procedure for maintaining the stall warning switch, Mr. Feith and Mr. Lukasik located Beechcraft Safety Communique 249R1, dated March 2006, that emphasized that it was "absolutely essential" that the stall warning system be "operational and in proper adjustment" in order to prevent precisely the type of occurrence that all parties agree caused this accident – a stall and unrecoverable spin. (Dkt. No. 120-6, Feith Supp. Report, pp. 4-6, ¶ 3) (Dkt. No. 120-11, Lukasik Supp. Report, p. 12, ¶ 4). The LeMay Aero Club records reviewed and described in these supplemental reports show that after each removal and re-installation of the stall warning system, there was no record of the necessary removal and re-installation of the stall warning switch (which most certainly occurred), much less any record of the type of test flight mandated by the Beechcraft maintenance manuals for re-calibration of the switch following reinstallation – which recalibration was critical to avoiding a stall and unrecoverable spin. (Dkt. No. 120-11, Lukasik Supp. Report, p. 13, ¶ 8) (Dkt. No. 120-6, Feith Supp. Report, pp., p6, ¶ 4). [1] As set forth in the supplemental reports, these required maintenance and flight test procedures were contained in the manuals available to the LeMay Aero Club, the Beechcraft Safety Communique was in the records produced by the

---

[1] As Defendant's expert Mr. Baumheuter also testified in another case, the failure to perform these flight tests to calibrate the stall warning switch rendered the aircraft unairworthy from that point forward to the date of the accidents. (Dkt. No. 113-4)( Baumheuter Curtis case deposition, pp. 45:6-47:3, 49:10-50:5, 65:20 – 69:2, 69:22-70:1). Mr. Baumheuter testified in this case, if the stall warning system had provided a warning prior to the stall, he would have expected the experienced pilots involved in this accident to have been capable of avoiding the stall and therefore preventing a spin. (Dkt. No. 112-4) Deposition of William Baumheuter, pp. 94;4 through 95;11. In essence, through his answers, Mr. Baumheuter admitted that if the stall warning system had functioned properly, it would have prevented this stall and spin accident.

LeMay Aero Club (Dkt. No. 120-11, Lukasik Supp. Report, p. 12, ¶ 4)(Dkt. No. 120-6, Feith Supp. Report, pp., p6, ¶ 4), and the failure to perform these procedures was critical to avoiding the type of accident in this case, particularly when combined with the LeMay Aero Club stall recovery procedures that Mr. Feith opined were directly contrary to the procedures and warnings contained in the Beechcraft Safety Communique. (Dkt. No. 120-6, Feith Supp. Report, pp. 4-7, ¶ 3).

Consistent with the Court's findings in *Hillesheim*, the expert witnesses in the case at bar prepared supplemental expert reports based on new developments they learned of, requiring supplementation of their initial expert reports. Plaintiff's experts were required to disclose their updated opinions to the other party after making additions to their reports in a material respect. The supplemental reports expanded on the experts' previously disclosed opinions with regard to the failures related to maintenance, record keeping, calibrations and flight testing the stall warning system. The supplemental reports were timely disclosed by Plaintiff more than thirty days before trial pursuant to the Federal Rules. Defendant's Motion to Strike Plaintiff's Supplemental Expert Reports must be overruled as Plaintiff's Supplemental Expert Reports were timely filed.

**II.     Even if the Court Determines the Supplemental Reports are Untimely, Defendant's Motion to Strike Must Be Overruled Because Any Delay in Disclosing the Supplemental Expert Reports is Substantially Justified and Harmless.**

Although standing on Plaintiff's position that the supplemental expert reports were timely disclosed and not conceding this issue, even if the Court deems the supplemental expert reports untimely, they should not be stricken because any delay in providing the supplemental expert reports is justified and harmless.

Fed. R. Civ. P. 37(c)(1) addresses a failure to disclose, to supplement an earlier response, or to admit, and states "(1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "A district court considers several factors in determining whether a Rule 26 violation is justified or

8

harmless, including: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. And, even then, the court need not make explicit findings concerning the existence of a substantial justification or the harmlessness." *Rodrick v. Wal-Mart Stores East, L.P.*, 666 F. 3d 1093, 2012 U.S. App. LEXIS 1181 (8th Cir. 2012); *Hillesheim v. O.J.'s Café, Inc.*, 2018 U.S. Dist. LEXIS 149057, 2018 WL 4190053 (Dist. of Nebraska, 2018).

"In determining whether to exclude the testimony of a witness not made in compliance with a pretrial order, in addition to these factors, courts have also considered the reason for the failure, importance of the witness's testimony, and the opposing party's need for time to prepare for the testimony." *Hillesheim v. O.J.'s Café, Inc.*, 2018 U.S. Dist. LEXIS 149057, 2018 WL 4190053 (Dist. of Nebraska, 2018).

When evaluating the factors set forth above to determine whether the timing of providing supplemental expert reports was justified and harmless in light of the circumstances of this case, there was no prejudice or surprise to Defendant with regard to the issue raised in the supplemental reports of the boots being taken off and the stall strips being put back on incorrectly. That issue was raised by Bert Aagesen in his deposition on June 21, 2022. Mr. Aagesen testified "the airplane had boots at first with rubber stall strips. Maybe we need to research whether those stall strips were put on the wing when the boots were taken off." (ECF No. 110, Ex. C, 86: 3-6). The response of Defendant's counsel was, "Okay. I will save that for another day. Let's go back to this. Let's go back to the stall." (ECF No. 110, Ex. C, 86: 7-8). Mr. Aagesen raised the issue, advised counsel that additional research may be necessary as to whether the stall strips were put on the wing when the boots were taken off, and Defendant's counsel chose not to further inquire or examine Mr. Aagesen regarding the issue. Defendant's counsel said he would save it for another day. Even after Plaintiff's counsel asked further questions about the removal of the boots and Mr. Aagesen testified "I don't think they were put back on as a metal piece where the stall strips had been with the boots on" and "it may be warranted to have a look into

9

that," Defendant's counsel still did not conduct any further examination on the issue. (ECF No. 110, Ex. C, 101: 5-12). Following the deposition of Mr. Aagesen on June 21, 2022, Defendant's counsel also did not question Jason Lukasik or Greg Feith about the issue of the removal of the boots or reinstallation of the stall strips during their depositions conducted on July 6, 2022, and July 7, 2022, respectively.

With regard to the ability to cure any prejudice or the extent to which introducing such testimony would disrupt the trial, as previously stated, had counsel for Defendant wanted to depose any of the experts on the issue, they had the opportunity to do so when Mr. Aagesen raised the issue during his deposition, but chose to save the issue for a later day. The issue was also not raised by Defendant's counsel in either of the depositions of Jason Lukasik or Greg Feith. The supplemental expert reports were then disclosed on September 8, 2022. Pursuant to the Federal Rules of Civil Procedure regarding the time to disclose expert testimony, Defendant's expert had the opportunity to rebut evidence on the same subject matter identified by another party within thirty days after the other party's disclosure. (Fed. R. Civ. P. 26(a)(2)(D)(ii)). Also, consistent with Plaintiff's position set forth in Section I above, Defendant's expert witness may be in a position to supplement his report up to thirty days prior to trial. Fed. R. Civ. P. 26(e)(2) and 26(a)(3)(B).

There is no evidence of bad faith or willfulness on the part of Plaintiff by producing the supplemental expert reports at the time of the summary judgment hearing. The Supplemental Report of Greg Feith set forth that he reviewed Mr. Aagesen's deposition transcript approximately one week after it was taken on June 21, 2022, and after learning of issues Mr. Aagesen testified about, including modifications to the airplane electrical system and the removal of the deicing system, Mr. Feith conducted further research consistent with Mr. Aagesen's suggestion in his deposition. Mr. Feith expanded on his prior opinions with regard to the improper installation of the stall strips and that the installation work performed was not documented in the available maintenance records, including the airframe logbook. (ECF No. 120, Ex. AE). During his further research, Mr. Feith also located Safety Communiques produced by Raytheon Aircraft Corporation addressing spin avoidance and spin characteristics. The Safety Communiques would have

10

been received by the Air Force as the registered owner of N55NE. When reviewing the information provided in the Safety Communiques, in conjunction with the LeMay Aero Club Stall Recovery Procedures, it became evident to Mr. Feith that a portion of the Stall Recovery Procedures in the LeMay Aero Club documents are contrary to the manufacturer's stall recovery procedures discussed in the Safety Communiques, and that the stall recovery procedures employed by the LeMay Aero Club could result in an unrecoverable spin if the airplane was to enter a full aerodynamic stall condition. (ECF No. 120, Ex. AE).

Similarly, following the deposition testimony of Mr. Aagesen, Jason Lukasik had discussions with counsel with regard to the personal knowledge Mr. Aagesen had of the situation regarding the removal of the boots and his concerns about the reinstallation of the stall strips. Jason Lukasik conducted further research into the maintenance of the accident aircraft, the manufacturer's service information, accident photos, and U.S. Army and Beechcraft publications and information. As a result of the further research conducted by Jason Lukasik, he developed additional opinions regarding the unairworthiness of the subject aircraft. Jason Lukasik discovered that following the removal of the deicing boots, there were no maintenance records of any removal or reinstallation of the stall warning switch or subsequent test flights to ensure calibration of the stall warning switch after its reinstallation, making the aircraft unairworthy. Following other occasions in 1999 and 2005 where the LeMay Aero Club conducted major wing repair, which included the removal and reinstallation of the stall warning switch, Mr. Lukasik determined that the logbooks did not document that any test flight of any kind took place on the aircraft, again making the subject aircraft unairworthy. He reiterated that Safety Communique 249R1 stated "it is absolutely essential that the stall warning system be kept operational and in proper adjustment at ALL TIMES." These findings of Mr. Lukasik set forth in his supplemental report provide additional support to his earlier opinions that the LeMay Aero Club systemically allowed the accident aircraft to be maintained and operated in an unairworthy condition and not in accordance with the Federal Aviation Regulations. (ECF No. 120, Ex. AH).

The reasoning set forth for the timing of the additional research conducted by Plaintiff's experts and the disclosure of the supplemental reports shows that there was no bad faith or willfulness on the part of Plaintiff or Plaintiff's experts. Rather, shortly after the issue came to light in Mr. Aagesen's deposition, Jason Lukasik and Greg Feith went to work to conduct further research and gather additional information relevant to the issue of the removal of the deicing boots and reinstallation of the stall strips, some of which had never been produced by Defendant.

Defendant makes the argument that Plaintiff disclosed rebuttal reports on July 15, 2022, and if it was necessary to develop supplemental opinions in response to Mr. Aagesen's deposition, they should have done so at the time they disclosed their rebuttal reports. However, the nature and purpose of rebuttal reports and supplemental reports are different. "Rebuttal experts must act to explain, repel, counteract, or disprove evidence raised by an adverse party. Under Fed. R. Civ. P. 26(a)(2)(D)(ii), rebuttal experts are those who present evidence that is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." *Wenjia Zhai v. Cent. Neb. Orthopedics & Sports Med, P.C.*, 2017 U.S. Dist. LEXIS 210907, 2017 WL 6557466 (Dist. of Nebraska, 2017).

With regard to the time to disclose expert testimony, Fed. R. Civ. P. 26(a)(2)(D) provides that "(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), the expert disclosure must be made within thirty days after the other party's disclosure. With regard to supplemental reports, Fed R. Civ. P. 26(e) provides that "(2) for an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."

Following the disclosure of Defendant's expert witness, William Baumheuter, on June 15, 2022, Plaintiff's experts had thirty days to disclose their rebuttal expert witness reports. Mr. Baumheuter's deposition was taken on July 13, 2022. This gave Plaintiff's

expert witnesses a very short time frame to review Baumheuter's report and his deposition testimony in order to timely rebut it, which Plaintiff's experts did.

Consistent with the Federal Rules, Plaintiff's experts properly focused their rebuttal reports on counteracting or disproving the information and/or opinions set forth in Defendant's expert report. Plaintiff's experts then properly addressed the issues raised in Mr. Aagesen's deposition regarding the removal of the deicing boots and improper installation of the stall strips in their supplemental expert reports, consistent with the Federal Rules.

Contrary to the *Trost* case cited by Defendant, Plaintiff and Plaintiff's experts did not sit idly by, ignoring scheduling deadlines or waiting to see what a defense expert might say before preparing an expert report. Rather, it is uncontested that Plaintiff sought extensions of deadlines when necessary and disclosed experts, their initial reports and rebuttal reports in a timely manner. The disclosure of the supplemental expert witness reports during the summary judgment proceedings was not the first time Plaintiff disclosed expert witness opinions. *Trost v. Trek Bicycle Corp.*, 162 F. 3d 1004 (8th Cir. 1998).

Furthermore, the circumstances of the case at bar differ from those cited to by Defendant in the case, *In re Baycol Prods. Litigation*, when the court found that a doctor could have reviewed records in greater detail at the time of his initial report, and that was an insufficient explanation for supplementing his report. *In re Baycol Prods. Litigation*, 596 F. 3d 884 (8th Cir. 2010). This case involves thousands of pages of maintenance records, manufacturer's manuals, and Aero Club and Air Force Policies and Procedures, to name a few. The expert witnesses were required to review all of those in developing their opinions, with discovery responses being supplemented and records continuing to be produced by Defendant through February, 2022. Plaintiff's expert witnesses also had to conduct further research and seek out information and documentation that was never produced by Defendant. Therefore, this case cannot be equated to a case involving the review of one individual's medical records.

With regard to the importance of the expert witness testimony and the supplemental reports, the substance of the supplemental reports is vitally important to this case as it is

additional evidence of Defendant's systemic failure to maintain the subject aircraft, keep records in accordance with rules and regulations, and provide an airworthy aircraft to Ronald Panting. Defendant received the Safety Communiques and was on notice that "it is absolutely essential that the stall warning system be kept operational and in proper adjustment at all times." (ECF No. 120, Ex. AE). Yet, as evidenced by the Supplemental Expert Reports of Jason Lukasik and Greg Feith, Defendant repeatedly failed to maintain the stall warning system following the removal of the stall strips, through improper reinstallation and failure to conduct calibration flight tests. The failures set forth in the supplemental expert reports further support and expand on the theories of causation in the initial expert reports.

Again, although not conceding the timeliness issue of the disclosure of the supplemental expert reports, this Court has set forth that "when a party fails to provide information or identify a witness in compliance with Rule 26(a) or (e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case. The district court's discretion narrows as the severity of the sanction or remedy it elects increases. Exclusion of evidence is a harsh penalty and should be used sparingly." *Hillesheim v. O.J.'s Café, Inc.*, 2018 U.S. Dist. LEXIS 149057, 2018 WL 4190053 (Dist. of Nebraska, 2018); See *Wegener v. Johnson,* 527 F. 3d 687 (8th Cir. 2008), *Trost v. Trek Bicycle Corp*, 162 F. 3d 1004 (8th Cir. 1998); quoting *ELCA Enters v. Sisco Equip. Rental & Sales*, 53 F. 3d 186 (8th Cir. 1995).

Defendant again cites to the *Trost* case in furtherance of its argument that the disclosure of the expert supplemental reports was not harmless and the reports must be stricken. As set forth above, the facts and circumstances of this case differ significantly from those in the *Trost* case. *Trost v. Trek Bicycle Corp.*, 162 F. 3d 1004, 1998 U.S. App. LEXIS 31734 (8th Cir 1998). In *Trost*, Plaintiff had not yet obtained an expert report of his own and had not scheduled depositions of opposing experts at the time the deadline for expert discovery was only days away. Plaintiff also made no attempt to obtain an extension of the deadline. Trost had testing completed forty-two (42) days after the deadline for completion of expert discovery and after a Motion for Summary Judgment had been filed.

Trost produced expert evidence for the first time with his summary judgment response. *Id.* The district court concluded that the expert's affidavit was inadmissible because it was untimely, did not comport with the substantive requirements of Fed. R. Civ. P. 26 and was based upon insufficient expertise. *Id.* The supplemental letter that was offered at the time of the summary judgment hearing was not received by the Court, and only the materials submitted in advance of the hearing were accepted by the Court. *Id.* On appeal, the United States Court of Appeals for the Eighth Circuit recognized that there was no question that the expert evidence was late, his proper course of action would have been to seek an extension of the deadline, and Defendant had prepared a Summary Judgment Motion at least partially premised on the lack of expert opinion to support Plaintiff's claims. The Court of Appeals further recognized that "while we might well have decided the question of an appropriate sanction differently, we cannot say that the district court's choice of sanctions was an abuse of discretion." *Id.*

The facts of the *Omaha Pub. Power Dist.* case cited by Defendant also differ from the case at bar. In *Omaha Pub. Power Dist.,* Defendant filed a Motion for Summary Judgment in part, because there had been no expert witness testimony implicating Defendant and its ball valves as a proximate cause of the fire. *Omaha Pub. Power Dist. v. Siemens Aktiengesellschaft,* 2002 U.S. Dist. LEXIS 6087, 2002 WL 826830 (Dist. of Nebraska, 2002).

In this case, the initial reports and rebuttal reports of Plaintiff's expert witnesses provide extensive evidence and opinions regarding the actions or inactions of Defendant, which were the proximate cause of the accident and Ronald Panting's death. Further evidence in the supplemental reports of even more failures discovered on the part of Defendant to properly maintain the subject aircraft, keep accurate records pursuant to applicable rules and regulations, and provide an airworthy aircraft, should not be deemed surprising to Defendant, and definitely not to the extent that the supplemental reports are stricken. Plaintiff's expert, Bert Aagesen, specifically raised the issue of those additional failures during his deposition in June of 2022, and Defendant's counsel chose not to pursue the issue or question the expert further about his opinions. (ECF No. 110, Ex. C, 86: 3-8).

In consideration of the factors and circumstances set forth above, the justification for the timing of filing the supplemental reports, and the harmlessness of allowing the reports, Defendant's Motion to Strike the Supplemental Expert Reports must be overruled. As previously stated, "exclusion of evidence is a harsh penalty and should be used sparingly." *Hillesheim v. O.J.'s Café, Inc.,* 2018 U.S. Dist. LEXIS 149057, 2018 WL 4190053 (Dist. of Nebraska, 2018). Defendant was provided notice of the issue of the deicing boots and whether the stall strips were properly reinstalled in June 2022, when Defendant conducted the deposition of Bert Aagesen. Defendant's counsel chose not to allow Plaintiff's expert witness to testify further about the issue or to follow up later to examine the Plaintiff's other experts on the issue. Once Defendant received the supplemental expert reports, their expert witness had the opportunity to review and rebut the supplemental expert witness reports within the time frame for rebuttal of expert testimony provided in Fed. R. Civ. P. 26(a)(2)(D)(ii). Defendant also had or has the same opportunity as Plaintiff to provide a supplemental expert report, if appropriate, pursuant to the Federal Rules. This Court, if it deems necessary, has the discretion to fashion a remedy under the circumstances of this case, such as allowing the continuation of the depositions of Plaintiff's expert witnesses with regard to the limited issues raised in the supplemental reports, and/or allowing Defendant additional time to disclose a rebuttal report of its expert witness to Plaintiff's supplemental expert reports, since Defendant did not already do so.

## CONCLUSION

Plaintiff timely filed the Supplemental Expert Reports of Jason Lukasik and Gregory Feith pursuant to Fed. R. Civ. P. 26(a)(2)(E), 26(e) and 26(a)(3)(B). Defendant's Motion to Strike Plaintiff's Supplemental Expert Reports as being untimely must be overruled. Even in the event that this Court determines the supplemental reports are untimely, they should not be stricken, because the timing of producing the supplemental expert reports was justified and harmless. Based upon the foregoing arguments, statutory authority and case law, Plaintiff requests that this Court overrule Defendant's Motion to Strike.

Dated this 17th day of October, 2022.

LYNNE D. PANTING, PERSONAL REPRESENTATIVE OF THE ESTATE OF RONALD B. PANTING, DECEASED,

Plaintiff,

By: /s/ Donald R. Andersen

Donald R. Andersen

Attorney for Plaintiff

Skinner Law Group

3340 Peachtree Road, Suite 1800

Atlanta, GA 30326

Phone: (404) 812.5320

andersen@skinnerlawgroup.com

By: _____

David E. Copple, #17274

Michelle M. Schlecht, #22864

Attorneys for Plaintiff

Copple, Rockey, Schlecht, Mason & Werth P.C., L.L.O.

2425 Taylor Avenue

Norfolk, NE 68701

Phone: (402) 371.4300

decopple@greatadvocates.com

mmschlecht@greatadvocates.com

By: /s/ Peter D. Kasdin

Peter D. Kasdin, #14091154

Attorney for Plaintiff

Peter D. Kasdin, Ltd.

145 Morris Lane

Lake Forest, IL 60045

Phone: (847) 295.1121

pkasdin@kasdinlaw.com

## WORD COUNT CERTIFICATION

Attorneys for Plaintiff hereby state that Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment was prepared using Microsoft Word 365, complies with the typeface requirements and the word count requirements of §2-103(c)(3), and contains a total of 5,878 words excluding this certification.

_____
Attorney for Plaintiff