IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LYNNE D. PANTING, PERSONAL REPRESENTATIVE of the ESTATE of RONALD B. PANTING,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 8:19-CV-317<br><br>MEMORANDUM AND ORDER |

    This matter is before the Court on the government's motion for summary judgment (filing 109). But in a joint motion (filing 134), the parties have requested that the Court stay consideration of summary judgment, "except as to the Covenant Not To Sue issue," to allow for further discovery. Accordingly, the Court will limit its analysis in this Order to whether the plaintiff's action is barred as a matter of law by the covenant not to sue signed by the deceased, Ronald Panting. Filing 111 at 1-2.[1] For the reasons outlined below, the government's motion for summary judgment on this issue will be denied.

---

[1] The government also requested that the Court rule on an additional matter at this time—whether Mr. Panting assumed the risk of his fatal injuries. Filing 134 at 2-3. But the Court agrees with the plaintiff's position: the additional discovery anticipated by the parties may be relevant to the Court's consideration of this issue. Both parties' assumption of the risk theory depends, at least in part, on what Mr. Panting knew about the condition of the aircraft and its stall warning horn before the accident. *See* filing 111 at 37-40; filing 127 at 48-52. And the anticipated discovery is expected to include additional facts about the "maintenance and flight testing of the switch prior to the accident" and "testing of the switch by expert

I. BACKGROUND

The LeMay Aero Club is a flight club located at Offutt Air Force Base in Omaha, Nebraska, and an instrumentality of the United States. Filing 111 at 3-4. According to Air Force Instruction (AFI) 34-217, aero clubs are "recreational activities" that give "eligible personnel" an opportunity to, among other things, participate in professional aviation training programs, and develop and maintain aeronautical skills. Filing 120-31 at 5. Eligible personnel who can apply for membership at Air Force aero clubs include, in part, active duty, reserve, guard, and retired military and certain family members of these individuals, as well as various federal employees and Civil Air Patrol members. *See* filing 120-31 at 5.

To support these programs, the LeMay Aero Club retains flight instructors—either as employees or individual contractors—to develop and conduct trainings. Filing 120-31 at 10, 12. These flight instructors are considered authorized members of the club. *See* filing 120-31 at 5. Additionally, the club allows Designated Pilot Examiners (DPEs) to conduct practical exams, or checkrides, with club members in its aircraft. *See* filing 111 at 4; filing 127 at 38; filing 120-31 at 25. DPEs are "private individuals" that are appointed as representatives of the Federal Aviation Administration (FAA) to "examine, test, and/or make inspections necessary to issue airman or aircraft certificates." Filing 120-25 at 15-17, 132.

The claims in this case arise from a crash involving a Beechcraft Baron aircraft operated by the LeMay Aero Club. *See* filing 111 at 3. On July 24, 2016, Ronald Panting and Michael Trubilla were on the aircraft, and both sustained fatal injuries when it crashed near Leshara, Nebraska. Filing 111 at 4. Lynne

---

witnesses" after the accident. Filing 134 at 1-2. Accordingly, the Court will not rule on this issue at this time.

Panting has now brought six claims under the Federal Tort Claims Act against the United States on behalf of her late husband's estate.

Mr. Panting served as LeMay Aero Club's Chief Flight Instructor from 2014 until July 2015, when he was appointed by the FAA as a DPE and resigned his position to avoid any conflict of interest "with respect to Aero Club members seeking check rides for Pilot certification." Filing 110-2 at 2; filing 111 at 4. However, on July 19, 2016, while still acting as an authorized DPE, Mr. Panting entered into a contract with the LeMay Aero Club to serve as a part-time Flight Instructor. Filing 120-1 at 6-7; filing 127 at 3. But the parties agree that on the day of the crash, Mr. Panting was acting exclusively in his role as a DPE and was administering a checkride to Mr. Trubilla, a Captain in the United States Air Force who was seeking his Airline Transport Pilot certification. *See* filing 111 at 4-5; filing 127 at 41.

The parties also concede the crash was the result of an "aerodynamic stall," which caused the aircraft to spin until it impacted the ground. Filing 111 at 7-8; filing 127 at 13. The dispute at the heart of this case is whether the government negligently maintained the Beechcraft Baron and, therefore, is liable for Mr. Panting's death. But the government also argues that such claims are barred as a matter of law by a covenant not to sue signed by Mr. Panting before the accident. Filing 111 at 16-26. And that is the matter addressed by this Order.

It is not disputed that on July 19, 2016, Mr. Panting signed a covenant not to sue the LeMay Aero Club. Filing 111 at 4; filing 127 at 3. This covenant stated:

> I, Ronald Panting, am about to voluntarily participate in various activities, including flying activities, of the LeMay Aero Club as a pilot, student pilot, copilot, instructor, or passenger. In

consideration of the Aero Club permitting me to participate in these activities, I, for myself, my heirs, administrators, executors, and assigns, hereby covenant and agree that I will never institute, prosecute, or in any way aid in the institution or prosecution of any demand, claim, or suit against the US Government for any destruction, loss, damage, or injury (including death) to my person or property which may occur from any cause whatsoever as a result of my participation in the activities of the Aero Club.

If I, my heirs, administrators, executors, or assigns should demand, claim, sue or aid in any way in such a demand, claim or suit, I agree, for myself, my heirs, administrators, executors, and assigns to indemnify the US Government for all damages, expenses, and costs it may incur as a result thereof.

I know, understand, and agree that I am freely assuming the risk of my personal injury, death, or property damage, loss or destruction that may result while participating in Aero Club activities, *including such injuries, death, damage, loss or destruction as may be caused by the negligence of the US Government.*

I also understand and agree that I may be held liable for any damages or loss to the US Government which is caused by my gross negligence, willful misconduct, dishonesty or fraud, and for limited damages or loss to the US Government which is caused by my simple negligence.

Filing 110-24 (emphasis added).

But the plaintiff argues that the covenant does not bar the current action because (1) Mr. Panting signed the covenant exclusively in his capacity as a flight instructor, making it inapplicable to claims arising from his activities as a DPE, or in the alternative, (2) the covenant is void against public policy under Nebraska law. *See* filing 127 at 41-47.

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could

conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## III. DISCUSSION

The plaintiff has brought this action under the Federal Torts Claim Act (FTCA), which "waives federal sovereign immunity for injuries 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable.'" *Newcombe v. United States*, 933 F.3d 915, 917 (8th Cir. 2019) (citing 28 U.S.C. § 1346(b)(1)). When analyzing claims brought under the FTCA, courts are "bound to apply the law of the state in which the acts complained of occurred." *King v. United States*, 3 F.4th 996, 999 (8th Cir. 2021) (quoting *Goodman v. United States*, 2 F.3d 291, 292 (8th Cir. 1993)). And "adoption of the proper state law applies not only as to the creation of liability but also as to release from liability." *See Air Transp. Assocs. v. United States*, 221 F.2d 467, 472 (9th Cir. 1955). Here, the parties agree that the conduct complained of and Mr. Panting's execution of the covenant not to sue all occurred in Nebraska. Thus, Nebraska law applies when determining the enforceability of this covenant.

The Court must determine whether the covenant not to sue signed by Mr. Panting bars the plaintiff's action as a matter of law. While the Court does not adopt the entirety of the plaintiff's reasoning, it agrees with the plaintiff's ultimate conclusion—the covenant at issue is contrary to public policy and unenforceable in the instant matter. Filing 127 at 44-47.

A covenant not to sue is "an agreement not to enforce an existing cause of action." *McCurry v. Sch. Dist. of Valley*, 496 N.W.2d 433, 441 (Neb. 1993).

And as both parties concede, certain covenants not to sue are enforceable under Nebraska law. *See* filing 127 at 40. But these clauses are not valid per se, as the "freedom to contractually limit [a] party's liability" may need to be "restricted for the public good." *New Light Co. v. Wells Fargo Alarm Servs.*, 525 N.W.2d 25, 30 (Neb. 1994). Accordingly, a covenant not to sue is void as against public policy if it is "quite clearly repugnant to the public conscience." *Bedrosky v. Hiner,* 430 N.W.2d 535, 540 (Neb. 1988).

Whether such an exculpatory provision violates public policy is ultimately a question of law. *Law Offices of Ronald J. Palagi, P.C., L.L.O. v. Howard,* 747 N.W.2d 1, 12 (Neb. 2008). But to make this determination, the Court must consider "the facts and circumstances of the agreement and the parties involved." *See New Light Co.*, 525 N.W.2d at 30. And while the Court must not take lightly the freedom of private parties to contract, the greater the threat to the public good, the stronger the argument in favor of voiding such agreements. *Id*. Other key considerations when determining whether a particular contract violates public policy include "(1) whether there was a disparity of bargaining power between the parties and (2) the types of services being offered or provided." *Sinu v. Concordia Univ.*, 313 Neb. 218 (2023).

The Nebraska Supreme Court has upheld private contracts that exculpate a party from liability for ordinary negligence. *See New Light Co.*, 525 N.W.2d at 29-31. For example, where there was no disparity in bargaining power, the court enforced a commercial lease that exculpated the lessor from liability for any damage to the lessee's property caused by the lessor's ordinary negligence. *See Bedrosky,* 430 N.W.2d at 541. Later, relying on *Bedrosky*, the court held that a similar contract exculpating a private company from its ordinary negligence in the maintenance of a restaurant's fire alarm system would also be enforceable. *See New Light Co.*, 525 N.W.2d at 29. And in *Mayer*

- 7 -

*v. Howard*, the court determined whether relieving "the owner of a racetrack from liability to one of the racers is repugnant to the public conscience." 370 N.W.2d 93, 98 (Neb. 1985). The court ultimately held that the exculpatory provision was *not* contrary to public policy given that the plaintiff (1) agreed to inspect the track and satisfy himself that it was in proper condition before racing, and (2) acknowledged that racing could result in serious injury or death. *Id*. at 98. According to the court, the agreement clearly brought to the plaintiff's attention the matters necessary to make an informed decision, and therefore, was not contrary to public policy. *Id*.

As in *Mayer*, the plain language of the covenant signed by Mr. Panting clearly states that he and his "heirs, administrators, executors, and assigns" would not institute claims against the United States arising from his participation in Aero Club activities, including for damages caused by the government's ordinary negligence. *See* filing 110-24. However, Mr. Panting did not explicitly agree in the covenant to inspect the aircraft and determine it was maintained to his satisfaction. The parties dispute whether Mr. Panting had a duty as a DPE to verify the airworthiness of the aircraft before starting the checkride, regardless of the language in the covenant. *See* filing 111 at 6; filing 127 at 7. But the Court need not decide if such a duty existed, as the circumstances in the present case are distinguishable from *Mayer* and lead the Court to conclude the covenant signed by Mr. Panting is contrary to Nebraska's public policy.

The decision in *Mayer* is not unique, as many jurisdictions, including Nebraska, have repeatedly upheld contracts entered by adults engaging in recreational activities that exculpate the activity provider's ordinary negligence. *See, e.g.*, *Sinu,* 313 Neb. 218 (upholding exculpatory agreement relieving university from claims by student that the university's negligence

caused injuries he sustained while training as a member of the soccer team); *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465 (Colo. 2004); *Massengill v. S.M.A.R.T. Sports Med. Clinic, P.C.*, 996 P.2d 1132 (Wyo. 2000); *Vodopest v. MacGregor*, 913 P.2d 779 (Wash. 1996). But in his role as a DPE, Mr. Panting was not boarding the government's aircraft to engage in a high-risk recreational activity.

Instead, on the day of the accident, Mr. Panting was serving as a designee of the United States appointed by the FAA. *See* filing 111 at 4. And the government provided its aircraft knowing Mr. Panting was executing an important government function—administering a test on behalf of the FAA to an applicant seeking his Airline Transport Pilot certification, a certification required to be a commercial airline pilot.[2] *See* filing 111 at 4. The United States has clearly acknowledged the "important part" DPEs play in carrying out the FAA's essential government functions. *See* filing 120-25 at 15. In fact, the U.S. Department of Transportation's National Policy proclaims that DPEs are appointed to "leverage its workforce and provide certification services to the public," and that "[DPE] function is vital to enhancing the FAA's public service role and enhancing overall safety in the National Airspace System (NAS)." Filing 120-25 at 15-16.

Thus, it would be a far cry to say that DPEs boarding government aircraft are voluntarily engaging in high-risk recreational activities simply

---

[2] The issue in front of the Court is the enforceability of a covenant not to sue between the government and a DPE. For this reason, the Court does not find the defendant's reliance on *Torjagbo v. United States*, 285 Fed.App'x 615 (11th Cir. 2008), to be highly instructive in the current matter. *Torjagbo* involved an Aero Club flight instructor who was flying with a student as part of the club's recreational activities, as opposed to an FAA designee conducting an essential government function.

because this conduct occurs at an Aero Club used by others for recreational activities. Accordingly, "the facts and circumstances of the agreement and the parties involved" in the present case are significantly distinguishable from those in *Suni* and *Mayer*, greatly reducing their instructive value. *New Light Co.*, 525 N.W.2d at 30. The *New Light Co.* court made clear that *Bedrosky* was not "a blanket approval of exculpatory clauses in all factual situations." *Id.* at 29. The Nebraska Supreme Court simply has yet to consider a covenant not to sue in circumstances similar to those presently in front of the Court. And where there is not "clear direction from [the] court, we must conduct our analysis as a predictive exercise, interpreting state law in the manner we believe the state's highest court would rule." *Graham v. CIOX Health, LLC*, 952 F.3d 972, 974 (8th Cir. 2020).

The Nebraska Supreme Court has acknowledged the state's public policy interest in limiting exculpatory clauses in contracts for public or essential services. *Suni*, 313 Neb. 218. And although the government, through the LeMay Aero Club, was not agreeing to provide Mr. Panting with an essential service in a traditional sense, it did implicitly agree to provide an aircraft on which a government designee would complete an essential government function. Such an arrangement appears to be relatively common, as both the Air Force and FAA have policies governing practical tests that are conducted by DPEs on military aircraft. *See* filing 120-31 at 25; filing 120-25 at 136-37. The nature of these circumstances—that both the parties to the contract and the subject of their relationship are inextricable from an essential government function—should not be easily overlooked.

And this dynamic also raises concerns regarding bargaining power. This is a case with peculiar facts when it comes to the contracting parties. As a designee of the FAA, Mr. Panting is in a "symbiotic relationship" with the

United States government. Filing 120-25 at 16. For his designation to be renewed, and to avoid being terminated for cause, it must be determined that Mr. Panting's designation is justified and in the FAA's interest. *See* filing 120-25 at 26, 28. In making this determination, the FAA may consider, in part, whether Mr. Panting's designation helps provide convenient services to the public and reduces the number of complaints it receives regarding lack of availability of certain certification testing. Filing 120-25 at 28. And while a DPE may have wide latitude in deciding when to administer a practical test, filing 111 at 39, it is not unreasonable to assume that an unwillingness to sign the covenant required to conduct such tests on the government's aircraft could adversely affect a DPE's ability to maintain his or her symbiotic relationship with the government moving forward.

To avoid similar concerns, the Nebraska Supreme Court has held that contracts allowing an employer to escape liability to its employees for negligence are against public policy. *Maucher v. Chicago, R.I. & P.R. Co.*, 159 N.W. 422 (Neb. 1916). This rule is driven by the state's "interest in the lives and healthy vigor of its citizens, which it will not allow the master to endanger by contracting against liability for his negligently endangering them." *Id*. And while neither party argues that Mr. Panting was a legal employee of the government in his capacity as a DPE, similar public policy concerns exist when the government is allowed to designate citizens to carry out vital government functions while simultaneously limiting its liability for any injuries the designee sustains while carrying out this role in a government aircraft. This is especially problematic considering FAA Inspectors, who are in the government's direct employ but perform "the same tasks as DPEs when administering checkrides," are "covered by the Federal Employees Compensation Act for workplace injuries." Filing 128 at 2.

For these reasons, the Court concludes that, if faced with the question, the Nebraska Supreme Court would hold that the covenant not to sue signed by Mr. Panting in his capacity as a DPE is repugnant to the public conscience and void as against public policy.[3] Accordingly, the government's motion for summary judgment is denied to the extent it argues that the covenant not to sue bars the plaintiff's action as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is denied as to the issues presented by the covenant not to sue. The parties suggest that the remaining issues presented by the defendant's summary judgment motion can be "stayed" pending further discovery, and that they can file supplemental briefing based on any new evidence. *See* filing 134 at 3-4.

The Court isn't persuaded that will be as easy as the parties assume. This case is complicated enough without trying to hit a moving target. For instance, the Court would be in a difficult position trying to sort out whether facts are contested or not, *see* NECivR 56.1, and that's only one example of the ways in which the Court would be required to determine whether the parties' positions had or had not shifted on critical issues.

Rather, the Court is convinced that the better approach is to start clean. The parties can, of course, copy-and-paste significant sections of their previous briefing where their argument remains viable, and may cite to previously filed exhibits without the bother of refiling them. But the certainty associated with fresh briefing outweighs any inconvenience to the parties imposed by having

---

[3] Since the Court has concluded that the covenant is void as against public policy, it need not consider the plaintiff's alternative theory that Mr. Panting never signed the covenant in his capacity as a DPE.

to reassert their arguments. Accordingly, the Court will *deny* the motion for summary judgment *in its entirety*, without prejudice to reasserting any arguments not disposed of in this memorandum and order in a renewed motion for summary judgment. The parties should be prepared to discuss a deadline for filing such a motion at their status conference with the Magistrate Judge. For now, however,

> IT IS ORDERED that the defendants' motion for summary judgment (filing 109) is denied.

Dated this 24th day of January, 2023.

BY THE COURT:

John M. Gerrard
United States District Judge
