IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

LYNNE D. PANTING, Personal
Representative of the Estate of
Ronald B. Panting, Deceased,

                Plaintiff,

vs.

UNITED STATES OF AMERICA,

                Defendant.

8:19-CV-317

MEMORANDUM AND ORDER

This case is before the Court on the United States' motion for summary judgment (filing 165) and the parties' cross-motions to exclude expert testimony (filing 159; filing 162; filing 168). The Court will mostly deny the motion for summary judgment, granting it only as to one theory of recovery. The Court will hold a pretrial hearing and argument on the parties' motions with respect to allegedly untimely expert disclosures. And the Court will deny the plaintiff's motion in limine with respect to the qualifications of the government's expert and foundation for his opinions, without prejudice to timely and appropriate objections at trial.

I. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City*

*of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## II. BACKGROUND

The plaintiff's husband, Ronald D. Panting, was killed in the May 24, 2016 crash of a small, twin-engine propeller-driven Beechcraft Baron airplane. Filing 167 at 3; filing 185 at 27.[1] The aircraft was owned and maintained by

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the

the "LeMay Aero Club," a flight club located at Offutt Air Force Base. Filing 167 at 3. Such flight clubs provide eligible personnel the opportunity to train and develop and maintain their skills. Filing 120-31 at 5. To further those goals, the Aero Club employs flight instructors to conduct training for club members. Filing 120-31 at 10-12. And the Aero Club allows its aircraft to be used by club members needing to pass practical examinations or "checkrides" while seeking FAA pilot certifications. Filing 111 at 4.

Panting was a Designated Pilot Examiner appointed by the FAA, meaning that he was authorized by the FAA to perform checkrides for applicants seeking pilot certifications from the FAA. Filing 167 at 4-5. At the time of the crash, Panting was administering a checkride to Michael Trubilla, an applicant seeking an airline transport pilot certification. Filing 167 at 4.

The aircraft's flight path has been reconstructed from radar: It took off and performed a series of turns before its speed dropped and it entered a stall-spin. Filing 167 at 6. That spin continued until the aircraft hit the ground. Filing 167 at 7. Panting and Trubilla died in the crash.

---

movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1)(B).

Counsel would be well-advised to review those rules should they find themselves in this Court again. In particular, the plaintiff's counsel should consider themselves fortunate that the Court has not simply adopted the government's statement of undisputed material facts, based on their disregard for this Court's rules specifying how to respond to a statement of material facts. *See* NECivR 56.1(b)(1). The plaintiff's responses often fail to correspond to the numbered paragraphs in the government's brief, leaving the Court to infer from context how they match up, and for the most part consist of arguments about the relevance or materiality of the asserted facts, which should have been reserved for the argument section of the plaintiff's brief. *See id.*

The central issue in this case is the condition of the electric stall warning switch on the aircraft, which was located on the front of the wing. Filing 167 at 8. One way in which a stall can occur is if the angle of the wing gets too high, meaning air can no longer flow smoothly over the top of the wing. Filing 167 at 7. The stall warning switch is a metal vane on the front of the wing: When the aircraft is close to stalling, the wind pushes up the vane and activates the switch, sounding a warning in the cockpit. Filing 167 at 8. But a pilot may notice other signs of an impending stall, such as buffeting of the aircraft or sluggish flight controls. Filing 167 at 8.

The plaintiff alleges that in this instance, the switch failed, leading to the crash. Filing 167 at 10. The parties dispute whether the Aero Club had properly maintained the switch on the aircraft. Filing 167 at 10. The switch apparently in place at the time of the crash was a salvage part that had been installed as a replacement in April 1999. Filing 185 at 38. The plaintiff points to a long list of alleged discrepancies in the logs of the plane's maintenance and repair. *See* filing 185 at 32-37.

And it is not disputed that in 2012, an entry had been made into the Aero Club's maintenance software system indicating that the stall warning switch on the Beechcraft was not working properly, and a mechanic had applied electrical contact cleaner to the switch to repair it. Filing 167 at 12. A former Aero Club flight instructor, Don Cook, also testified that a "couple of times" when the stall switch hadn't functioned on the ground, a mechanic would clean the contacts and clear the problem. Filing 167 at 12. According to the plaintiff, that procedure wasn't consistent with the manufacturer's instructions or the administrative regulations which incorporate them. Filing 185 at 36-37.

Both parties rely on the testimony of Glen Goss, an Air Force pilot who performed a checkride with Panting in the same Beechcraft Baron two days

before the fatal crash. Filing 167 at 10-11. During a checkride, a pilot may be asked to demonstrate stall recovery skills by initiating and recovering from an impending stall. *See* filing 167 at 8-10. Goss said that on his checkride, he didn't hear the stall warning horn, but felt a "buffet" that he understood to be a sign of impending stall, which he recovered from at that point. Filing 167 at 11; *see* filing 185 at 41. But on one of his landings, the stall warning horn activated, and he concluded the horn worked, so he didn't ask for a repair. Filing 167 at 11; filing 185 at 41. The government, for its part, points to testimony suggesting that after the flight, Panting and Goss discussed the erratic operation of the stall warning horn. Filing 167 at 11.

After Goss' checkride, Cook—then the Aero Club's chief flight instructor—flew the aircraft from Offutt AFB to the Millard Airport, where the Aero Club's fleet was to be temporarily relocated. Filing 167 at 11. The next day—the day after Panting's checkride with Goss, and the day before Panting and Trubilla crashed—Cook flew with Trubilla, including stall recovery practices. Filing 167 at 12; *see* filing 110-6 at 15. Cook testified: "As far as I can recall each time we performed stalls the stall warning horn worked. I don't recall any stalls being performed where recovery was not indicated at a stall warning." Filing 110-6 at 20.

After the crash, however, FAA inspectors tested the stall warning switch, and found that it failed an electrical continuity test. Filing 185 at 37. And it was discovered that at some point the switch's seal had apparently been broken and resealed, resulting in internal corrosion on the switch mechanism. Filing 185 at 37, 40.

The plaintiff, as personal administrator of Panting's estate, sued the United States alleging what are, in the plaintiff's operative amended complaint, styled as six separate causes of action: wrongful death, "medical,

funeral and burial expenses," "conscious pain and suffering of the decedent," negligence, *res ipsa loquitur*, and "tortious breach of contract." Filing 33.

## III. DISCUSSION

### 1. MOTION FOR SUMMARY JUDGMENT

The plaintiff's claims really boil down to two: negligence and breach of contract. The government moves for summary judgment as to both.

### (a) Standard of Care

Under the Federal Tort Claims Act, the United States is liable in the same manner and to the same extent as are private individuals under like circumstances. 28 U.S.C. § 2674; *LaFond v. United States*, 781 F.2d 153, 154 (8th Cir. 1986). And in Nebraska, to prevail in any negligence action a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty. *McReynolds v. RIU Resorts & Hotels, S.A.*, 880 N.W.2d 43, 47 (Neb. 2016).

The government's argument as to the plaintiff's negligence claim is directed at the alleged failure to protect Panting from injury—specifically, the standard of care. According to the government, the plaintiff's negligence claim is premised entirely on 14 C.F.R. § 43.13(a), which provides in relevant part:

> Each person performing maintenance, alteration, or preventive maintenance on an aircraft, engine, propeller, or appliance shall use the methods, techniques, and practices prescribed in the current manufacturer's maintenance manual or Instructions for Continued Airworthiness prepared by its manufacturer, or other

methods, techniques, and practices acceptable to the Administrator. . . .

That regulation, in other words, requires a person maintaining an aircraft to employ either (1) "the current manufacturer's maintenance manual" or (2) "other methods, techniques, and practices" accepted by the FAA. *See id.*; *Kornitzky Grp., LLC v. Elwell*, 929 F.3d 737, 741 (D.C. Cir. 2019).[2]

The government claims the plaintiff has no evidence that the Aero Club violated this regulation.[3] According to the government, the plaintiff's expert is

---

[2] The parties seem to assume, without explaining, that the standard of care for this state-law negligence claim is found in FAA regulations. *See* filing 167 at 14-20; filing 185 at 46-48. The government does point to Nebraska law (well known to the undersigned) stating that violation of a safety regulation is not negligence as a matter of law, but may be considered as evidence of negligence. Filing 167 at 14 (citing *Orduna v. Total Const. Servs., Inc.*, 713 N.W.2d 471, 479 (Neb. 2006)). But there is also substantial authority holding that state-law standards in this area are preempted by the federal government's occupation of the field of aviation safety. *See, e.g.*, *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1327 (10th Cir. 2010); *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007); *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 795 (6th Cir. 2005); *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367 (3d Cir. 1999).

Absent the government's reliance on evidence other than FAA regulations to prove or disprove negligence, the Court assumes—at least for now—that the FAA regulations are dispositive. The Court also infers that the airplane at issue was a civil aircraft, not a military aircraft. *See Jones v. Goodrich Pump & Engine Control Sys., Inc.*, 86 F.4th 1010, 1018 (2d Cir. 2023). If the government expects the Court to find the standard of care elsewhere, it should be prepared to explain why FAA regulations don't preempt the field.

[3] The Court questions whether the plaintiff's allegations of the Aero Club's breach of the standard of care are, as the government suggests, *wholly* predicated on using the wrong manual and failing to replace the switch. *See* filing 120-7 at 35-37. But the Court rejects the government's argument even accepting its premise.

factually wrong about whether the Aero Club was using the wrong version of the shop manual for the aircraft. *See* filing 167 at 15-16. The one the plaintiff claims is correct says that when the stall warning switch is broken, the repair is to "replace switch." Filing 167 at 16 (citing filing 120-7 at 379). But the manual the government says is correct says, "Check switch for proper operation. Replace if necessary." Filing 167 at 16 (citing filing 166-3 at 405).

The Court isn't persuaded by the government's argument—and, in fact, is a little confused by why the government thinks this is a "gotcha" moment. To begin with, the Court—like the plaintiff—can't really see the difference between those instructions. One manual says to replace a broken switch, the other says to make sure it's broken and *then* replace it. As the plaintiff points out, *neither* manual says anything about attempting to repair the switch itself, by the procedure reflected in the logs or any other technique. Filing 185 at 44. Perhaps what the logs describe falls into the category of "check[ing] switch for proper operation," but the Court can't reach that conclusion at this point.

Nor does the Court understand why the government thinks it's dispositive that the regulation, § 43.13(a), permits use of "other methods, techniques, and practices acceptable to the Administrator" to repair an aircraft. *See* filing 167 at 16-18. True, that regulation does leave open the possibility that the Aero Club didn't *have* to rely on the shop manual when maintaining the aircraft. But that simply raises the question of what the Aero Club *did* rely on—and there's nothing in the government's brief suggesting the Aero Club was following some other standard *acceptable to the Administrator*.

In lay terms, what § 43.13(a) says is "use the manufacturer's manual, unless the FAA says something else." The regulation does not, at first blush,

- 8 -

appear to be ambiguous.[4] The government's attention seems to be focused on the Aero Club's use of a later version of the shop manual to maintain the aircraft—which, it says, isn't prohibited by any regulation. *See* filing 167 at 18-20. Perhaps, perhaps not—but as explained above, at this point, the Court is hard-pressed to see the difference between the two manuals.

On a motion for summary judgment, it's the movant's initial burden to show—that is, to point out to the Court—an absence of evidence to support a nonmoving party's case; then, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Rusness v. Becker Cnty., Minn.*, 31 F.4th 606, 614 (8th Cir. 2022). The Court is not convinced that the government met its initial burden here—rather than point to an *absence* of evidence, the government has pointed to evidence that it says is legally insufficient. Because the Court disagrees, it will deny the government's motion as to the plaintiff's negligence claim.

### (b) Res Ipsa Loquitur

The government seeks to separately dismiss the plaintiff's *res ipsa loquitur* theory. The Court declines.

Generally, in a negligence case, the mere occurrence of an accident which causes an injury and does damage does not create a presumption of negligence

---

[4] The Court notes that the government relies on two FAA orders interpreting § 43.13(a) to support its reading of the regulation as, apparently, non-binding. *See* filing 166-4 at 2; filing 166-5 at 2. The government can't assume, however, that the FAA's interpretation of its regulation is dispositive. *See generally Kisor v. Wilkie*, 139 S. Ct. 2400, 2408 (2019). It's not clear to the Court whether the parties dispute how § 43.13(a) should be construed. But if they do, the parties should be prepared to address the degree of deference that the agency's own construction of the regulation should be afforded. *See Kisor*, 139 S. Ct. at 2414-18.

or authorize an inference of negligence. *Roberts v. Weber & Sons, Co.*, 533 N.W.2d 664, 667 (Neb. 1995). But the doctrine of *res ipsa loquitur* is an exception to that general rule. *Anderson v. Union Pac. R.R. Co.*, 890 N.W.2d 791, 796 (Neb. 2017). As such, it's procedural, not substantive: it's just a form of circumstantial evidence. *See Roberts*, 533 N.W.2d at 667. If *res ipsa loquitur* applies, an inference of a defendant's negligence exists for submission to the fact finder, which may accept or reject the inference in determining whether the defendant is negligent. *Id.*; *see McLaughlin Freight Lines, Inc. v. Gentrup*, 798 N.W.2d 386, 389 (Neb. 2011).

There are three elements that must be met for *res ipsa loquitur* to apply: (1) The occurrence must be one which would not, in the ordinary course of things, happen in the absence of negligence; (2) the instrumentality which produces the occurrence must be under the exclusive control and management of the alleged wrongdoer; and (3) there must be an absence of explanation by the alleged wrongdoer. *Id*. The government's argument is focused on the second: the "exclusive control and management of the wrongdoer." Filing 167 at 21-22. The government argues that the aircraft was, at the time of the crash, under the control of Panting and Trubilla, neither of whom was an agent of the Aero Club. Filing 167 at 22.

The government's theory seems to be that because Panting or Trubilla could have been responsible for the crash, *res ipsa loquitur* can't apply. But that depends on too broad a reading of "occurrence." The possibility of *contributory* negligence doesn't defeat *res ipsa loquitur*. *See*, *e.g.*, *Sober v. Smith*, 136 N.W.2d 372, 375 (Neb. 1965). Rather, the alleged "occurrence" is the failure of the stall warning switch.

The Court has some doubts about whether the plaintiff can sustain a *res ipsa loquitur* theory. It seems hard to prove that a stall warning switch couldn't

fail without negligence. But the plaintiff can try, and the government can question whether the switch actually failed, whether such a failure can be attributed only to negligence, and perhaps most importantly whether any such failure was the factual cause of the crash—which appears, to the Court, to be the actual gravamen of the government's argument. *See* filing 167 at 23.

As noted above, the doctrine of *res ipsa loquitur* is a procedural rule of evidence, not a substantive claim for relief. As such, it isn't separate from the plaintiff's general claim for negligence—it's just one way that the plaintiff can try to prove it. Whether—*on the facts of this case*—submitting her case on that theory is permitted or wise, *see* Anderson, 890 N.W.2d at 796, is a question the Court will take up on the trial record.

### (c) Breach of Contract

The plaintiff alleged a separate breach of contract claim, relying on an alleged contractual duty to provide a safe aircraft. Filing 33 at 15-17. The government argues that the contract the plaintiff relies on was inapplicable, and more broadly that *if* the claim arises in contract, exclusive jurisdiction over the claim lies with the Court of Federal Claims. Filing 167 at 24.

If the second proposition is true—and it may well be, *see V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000)—then the Court lacks jurisdiction to consider the first. The Court questions, more fundamentally, whether the plaintiff can assert a separate breach of contract claim at all—it seems as if the gravamen of the claim is tort, not contract. *See Driekosen v. Black, Sivalls & Bryson, Inc.*, 64 N.W.2d 88, 92 (Neb. 1954); *see also Lesiak v. Cent. Valley Ag Co-op., Inc.*, 808 N.W.2d 67, 82 (Neb. 2012).

But the Court need not definitively resolve those questions, because the plaintiff has waived her breach of contract claim by failing to defend it in her summary judgment brief. *See* filing 185. A party's failure to brief an issue

raised in a motion may be considered waiver of that issue. NECivR 7.1(a)(1)(A). And the Eighth Circuit has held that the failure to oppose a basis for summary judgment constitutes waiver of that argument. *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020). Accordingly, the Court will dismiss the plaintiff's breach of contract claim.

### (d) Assumption of Risk

The government argues that Panting necessarily assumed the risk of the crash, and that the plaintiff's negligence claim fails for that reason. Filing 167 at 24-29. The Court is unpersuaded, at least on summary judgment.

To begin with, the Court clarifies that *summary judgment* standards apply here. The government invites the Court to weigh the evidence, suggesting that because this matter is set for a bench trial, and the record on this issue is complete, the Court might as well decide it and save everyone the trouble of trying the case. *See* filing 167 at 29. And to be sure, the government cites authority that seems to support that. *See* filing 167 at 29 (citing, *e.g.*, *Matter of Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991)).

But it's hard for the Court to square such a holding with the rather plain dictates of Rule 56. And even the *Placid Oil Co.* holding is qualified: "it makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, *unless those inferences involve issues of witness credibility or disputed material facts*." 932 F.2d at 398 (emphasis supplied). The plaintiff certainly seems to be disputing material facts here. But more broadly, the Court is unwilling to gamble on compromising Rule 56 in the absence of clear Eighth Circuit precedent approving such a procedure. *Cf. Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024-26 (8th Cir. 2021) (holding that in

- 12 -

ERISA cases the court may not deviate from ordinary summary-judgment procedures even though the factfinder and record may remain the same).

Furthermore, the parties are at this point disputing what evidence is available on this issue. Specifically, the government's argument rests on what Panting allegedly said to Goss following their checkride two days before the crash, filing 167 at 26-27, but the plaintiff says that Panting's statements are hearsay, filing 185 at 59-60. Those statements may fall within a definitional exclusion or hearsay exception. *See, e.g.*, *Huff v. White Motor Corp.*, 609 F.2d 286, 290-95 (7th Cir. 1979); *Phillips v. Grady Cnty. Bd. of Cnty. Comm'rs*, 92 F. App'x 692, 696 (10th Cir. 2004). But the government's first run at establishing the admissibility of these statements came in its reply brief, and lacked any authority beyond bare citation to the Rules of Evidence. Filing 188 at 14. The Court declines to make this evidentiary determination without a more developed argument from both parties.

And even if the statements are admitted, the Court finds a genuine issue of material fact. Assumption of the risk is an affirmative defense, and the defendant must show that the plaintiff (1) knew of the specific danger, (2) understood the danger, and (3) voluntarily exposed himself or herself to the danger that proximately caused the damage. *Jay v. Moog Auto., Inc.*, 652 N.W.2d 872, 881 (Neb. 2002). Importantly, the doctrine of assumption of risk applies a *subjective* standard, geared to the individual plaintiff and his or her actual comprehension and appreciation of the nature of the danger he or she confronts. *Id.* The standard to be applied in determining whether a plaintiff has assumed the risk of injury is a subjective one based upon the particular facts and circumstances of the event. *Id.*

And here, the Court cannot determine as a matter of law how Panting interpreted the alleged failure of the stall warning during the demonstrated

- 13 -

stalls on Goss' flight, given the warning's activation on landing. There is an argument to be made for assumption of the risk here—but it is not, as the government argues, an issue on which reasonable people can't disagree.

## 2. UNTIMELY DISCLOSURES

Both parties have filed motions seeking relief with respect to allegedly untimely expert disclosures by the other side. Filing 159; filing 168.[5] The Court will take both motions under advisement after a hearing.

Generally, a party's failure to disclose in a timely manner is equivalent to a failure to disclose. *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) Under Federal Rule of Civil Procedure 37(c)(1), the Court may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). The Court's power to exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial orders is essential to its control over the case. *Sellers v. Mineta*, 350 F.3d 706, 711 (8th Cir. 2003).

Accordingly, when a party fails to provide information or identify a witness in compliance with Fed. R. Civ. P. 26(a), the Court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case. *Wegener*, 527 F.3d at 692. In determining whether the failure to disclose was substantially justified or harmless, and to help decide upon an

---

[5] At least, that's how the Court interprets the plaintiff's motion, which complains that the supplemental opinion of the government's expert was outside the scope of discovery that was reopened after additional evidence of maintenance history was discovered. *See* filing 169. The plaintiff's brief is unclear about what Federal Rule of Civil Procedure would warrant excluding such evidence, and the only thing the Court can think of is that because the opinion wasn't related to the reopened discovery, it should have been disclosed earlier.

appropriate sanction or remedy, the Court must also consider the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony. *Id.*

The government has put all its eggs in one basket—it argues that its expert's supplemental report is consistent with his earlier opinions, and that his supplemental report is actually responsive to the plaintiff's allegedly untimely disclosure. *See* filing 184 at 3-5.[6] The plaintiff defends her disclosures as appropriate, but also argues that any delay was substantially justified and harmless. *See* filing 172 at 20-26.

But both those motions were first filed in November. Before making any determination on these issues, the Court wants to know more about what—if anything—has happened since then, particularly what the parties may have done to mitigate any prejudice. *See Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 790 (8th Cir. 2018). The Court will, in its trial order, set argument on these motions. But the Court is mindful that exclusion of evidence is a harsh penalty and should be used sparingly. *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 645 (8th Cir. 2022). It seems to the Court like both parties have been aggressive in the ongoing back-and-forth between their respective experts, and that applying the same standards to both sides may lead to the same result on both motions—whatever that result may be. But the Court will permit the parties to take that up at argument.

---

[6] The government has not asked for a lesser sanction than exclusion, *should* the Court conclude that its disclosure is untimely—raising a question about whether the Court could impose a lesser sanction *sua sponte*. *See Cantrell v. Coloplast Corp.*, 76 F.4th 1113, 1115-16 (8th Cir. 2023); *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 705 (8th Cir. 2018). The Court expresses no opinion on that at this time.

### 3. BAUMHEUTER'S TESTIMONY

Finally, the plaintiff seeks to exclude testimony from the government's expert, William Baumheuter, on more substantive grounds. Filing 162; *see also* filing 169 at 8-15. The plaintiff argues that Baumheuter's opinions should be excluded pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).

The objective of the *Daubert* inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 722 (8th Cir. 2015). And in order to be admissible, expert testimony must be both relevant to a material issue and reliable. *Id.* at 591; *see also Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1120 (8th Cir. 2006); *see* Fed. R. Evid. 702.

*Daubert* established a non-exclusive checklist for trial courts to use in assessing the reliability of expert testimony, including whether the theory or technique can and has been tested, whether it has been subjected to peer review, whether there is a high known or potential rate of error, and whether the theory or technique enjoys general acceptance within a relevant scientific community. *See U.S. v. Holmes*, 751 F.3d 846, 850 (8th Cir. 2014) (citing *Daubert*, 509 U.S. at 592-94). And for the purposes of evaluating the relevance of expert testimony, the Court must determine whether the expert's reasoning or methodology was applied properly to the facts at issue. *Daubert,* 509 U.S. at 580. To that end, expert testimony that is speculative, unsupported by sufficient facts, or contrary to the facts of the case, is inadmissible. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006).

That said, most of the plaintiff's objections are unrelated to the methodological inquiry required by *Daubert*. They are, rather, mine-run objections to Baumheuter's qualifications and the general foundation for his opinions. *See* filing 164 at 17-40. The plaintiff is free to cross-examine Baumheuter at length about his lack of experience in crash investigation, aircraft design or aerodynamics, or test piloting. *See* filing 164 at 17-21, 27-31, 36. The plaintiff is free to argue at length that the evidence she adduces contradicts Baumheuter's opinions. *See* filing 164 at 22-26, 33-39.

The fact remains that Baumheuter is a pilot, flight instructor, Designated Pilot Examiner, and aircraft mechanic. Filing 198-2 at 39-42. Especially in this *bench trial*, the plaintiff's arguments about the weight to be afforded Baumheuter's testimony should be raised at trial. *See*, *e.g.*, *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) (*Daubert* standard relaxed for bench trials because "there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself").

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED:

1. The government's motion for summary judgment (filing 165) is granted in part and denied in part.

2. The plaintiff's breach of contract claim is dismissed.

3. The parties' motions to exclude untimely disclosures (filing 159; filing 168) are taken under advisement pending argument.

4.     The plaintiff's motion to exclude (filing 162) is denied
       without prejudice to timely objections at trial.

Dated this 26th day of February, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge